[Civ. No. 8315.   Third Dist.   Apr. 12, 1954.]

SAM B. JACKSON, Appellant, v. COLEMAN BURKE et al., Respondents.

Laughlin, McKalson & Crable and Robert E. Laughlin for Appellant.

Walter F. Pettit for Respondents.

SCHOTTKY, J.—Plaintiff, a judgment creditor of Plumas Land Company, a Nevada corporation, commenced an action against defendants to set aside a deed of trust executed by said company, defendant Coleman Burke being named as beneficiary under said deed of trust. The complaint alleged that defendants were officers, directors and stockholders of said company and that said deed of trust "was placed upon said real property for the purpose of hindering, delaying and defrauding the creditors of said corporation, including this plaintiff, and that said encumbrance was made without adequate or any consideration."

Defendants Burke and Barry filed an answer denying all of the material allegations of the complaint, and defendant Wilson filed a separate answer also denying said allegations.

The action was tried before the court, sitting without a jury, defendants Burke and Barry being represented by counsel at the trial but defendant Wilson not appearing at or participating in the trial as a party. The trial court found, in substance, that defendants had not wasted or dissipated the assets of the land company, and that all of the assets had been sold and the company was insolvent; that the real property described in plaintiff's complaint was not an asset of the land company when the subject action was commenced, the property having been sold at a trustee's sale, on about August 12, 1948, pursuant to the terms of a deed of trust dated September 23, 1946, and duly executed by the company to secure its promissory note in the sum of $50,000; that the deed of trust was made and executed for an adequate and valuable consideration and was not placed upon the property for the purpose of hindering, delaying or defrauding any creditor of the company; and that defendants did not sell or transfer any assets of the company to defraud appellant or any other creditor of the company. Judgment was entered in favor of defendants in accordance with said findings and, after his motion for a new trial was denied, plaintiff filed this appeal from said judgment.

Appellant makes a vigorous attack upon the judgment, the burden of his argument being that the record does not sustain the findings of the trial court. ██ Before discussing the specific contentions of appellant it is well to point out once more that in reviewing the sufficiency of evidence to support a judgment, the test to be applied by an appellate court is whether or not there is any substantial evidence to support the findings of the jury or trial court. ██ All questions of the weight of the evidence and the credibility of the witnesses are for the jury and the trial court, and if there is any substantial evidence to support the verdict or finding it cannot be set aside by the reviewing court, although said court may believe the great preponderance of the evidence was the other way. ██ The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion of the trier of the facts. ██ All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to

uphold the verdict if possible. ■ When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial judge or jury. (*Estate of Bristol,* 23 Cal. 2d 221 [143 P.2d 689]; *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384].)

Bearing in mind the familiar rule just stated, which we are constrained to say is too often disregarded by many counsel who pay lip service to the rule and then proceed to argue the weight of conflicting evidence before an appellate tribunal, we shall summarize briefly the factual situation as disclosed by the record.

■ The evidence shows that in 1945, R. Pierce Wilson, who was one of the defendants but is not a party to this appeal, had some options to purchase certain mining property and equipment located in Plumas County and known as the Walker Mine property. He was able to interest three New York residents in a plan to purchase and operate the property, the latter agreeing to invest certain moneys in the venture. These three investors were W. Gibson Carey, Fred Dunning and respondent Barry, and for convenience we will refer to them collectively as the "New York group" or the "group." Two Nevada corporations were formed, i.e., Plumas Land Company and Plumas Mining Company. Later, Plumas Lumber Company was set up. We are primarily concerned with the affairs of the land company in this appeal.

It appears that the New York group originally proposed to invest not more than $50,000 in the venture and to participate therein with Wilson on a 50-50 basis. Accordingly, the initial stock subscription and issue was 250,000 shares to the New York group and members of their families, and a like number of shares to Wilson. The stock subscriptions were made in early December, 1945, and the par value of the stock was ten cents per share. The evidence shows that the New York group made early advances totalling some $30,000 or $31,000, $25,000 of which was used to take up certain of the options, on behalf of the land company, and the remainder was a loan to the company, although there is some dispute as to the loan. Respondent Barry testified that the first $25,000 so advanced was for payment of the group's 250,000 shares. Wilson was to assign his options to the land company and receive his shares in payment. In order to obtain a promise of additional financial support, Wilson gave up 25,000 shares, thus insuring stock control in the New York group. Fifty

thousand additional shares were issued to Carey and Dunning on August 20, 1946; respondent Barry referred to these shares as bonus shares, but it appears that cash payment was made at par value. It further appears that the New York group did not get the 25,000 shares surrendered by Wilson, for its total stock holdings in the land company were 550,000 shares, including the 50,000 subsequently issued. In December, 1945, officers of the land company were elected and Wilson became president, George B. Thatcher, the Reno attorney who handled the formation of the company, became vice president, respondent Barry became treasurer, Coleman Burke, a New York attorney, became secretary, and a V. Morby became assistant secretary.

Sometime in the summer or early fall of 1946 (appellant says it was on September 20, 1946), the land company acquired record title to the Walker Mine real property. Thereafter, on September 23, 1946, the company executed a demand promissory note in the principal sum of $50,000, payable to Burke, which note was secured by a deed of trust to the company's real property. Both the note and deed of trust were signed by respondent Barry as treasurer of the company, and Burke, as secretary, attested the execution by affixing his signature. California Trust Company was named trustee, and Burke was named beneficiary, in the deed of trust. This latter instrument was executed in several counterparts; one copy was recorded on January 14, 1947, and sometime thereafter Wilson signed another copy as president of the company. Wilson resigned this office in January, 1947, and there is some dispute as to whether he was president when he signed. However, respondent Barry testified positively that Wilson was still in office as president at the time. Barry also testified that the deed of trust was authorized at a meeting of the directors held in New York on August 20, 1946, at which Wilson was present and expressed his agreement to the proposal. Wilson, Burke and respondent Barry were directors when the deed of trust was executed.

The evidence shows that many thousands of dollars were advanced to the company by the New York group both prior and subsequent to the execution of the deed of trust and that the subsequent advances would not have been made in the absence of the note and deed of trust. The exact amount of these advances is not clear from the record, although there are numerous vouchers and cancelled checks in evidence showing substantial sums. Respondent Barry testified that as of

November 19, 1946, some two months after the note and deed of trust were given, the New York group had advanced $64,794.20, and that between that time and March 5, 1947, the group advanced another $16,000 or $17,000. Wilson attempted to controvert these amounts at the trial, but admitted that he did not know what the amount of the advances was. These advances do not include the $25,000 paid out by the group for the stock initially issued to it.

The deed of trust was foreclosed by trustee's sale held in August, 1948. The notice of default was dated August 27, 1947, and was recorded on February 27, 1948. The property was bid in by Burke, the beneficiary, who received a deed from the trustee, and, in turn, gave a deed to Dunning and respondent Barry. Neither of these deeds has been recorded because of pending litigation. Carey, the other member of the New York group, had died in October, 1947, and apparently Eleanor Carey succeeded to his interest. Burke, himself, had no interest in the property, but was acting for the New York group. Since the foreclosure sale, respondent Barry has been in charge of liquidating the property. Barry testified that both when the deed of trust was executed and at the time of the foreclosure sale, the land company had no creditors except the New York group and Sugarman-Randolph, and the latter was secured by conditional sales contracts. There is no showing in the record that Sugarman-Randolph ever questioned the deed of trust.

Apparently the venture never was profitable, although the New York group did advance further moneys after the filing of the notice of default. Charges of mismanagement were made by Barry against Wilson, and the latter made counter-charges. In any event, Wilson was elevated to the chairmanship of the company, to serve without salary, and he was succeeded as manager by a Los Angeles banker by the name of Cannon. Subsequently (appellant says it was on August 20, 1948), Wilson brought an action against the land company, Barry and others, for recovery of the property, which action was pending before the same trial court when the instant case was tried.

Appellant is a judgment creditor of the land company. He was in the company's employ from April, 1947, until at least November, 1948, and perhaps later. He was hired by Cannon, then the manager, and apparently replaced Cannon as manager in October, 1947. Appellant's claim, which was reduced to judgment, was for wages for the period from

April, 1947, to November, 1948. His employment commenced some seven months after the deed of trust was given.

Appellant contends that at the time the deed of trust was executed he was a future creditor of the Plumas Land Company and as such is entitled to have said deed of trust set aside as fraudulent by reason of section 3439.07 of the Civil Code, which reads: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Appellant then argues that the evidence shows fraudulent intent and takes exception to the trial court's findings on the following grounds: (1) That the wrongful intent to defraud creditors was admitted by respondent Barry and defendant Wilson; (2) that the trial court did not take into consideration the manifest irregularities in the making of the deed of trust or the circumstances surrounding the transaction and the relationships and interests of the parties; (3) that the directors of the company afforded to themselves an unlawful preference in the payment of their claims; and (4) that the trial court was influenced by the New York group's claims against Wilson, whereas the latter's misdeeds should not be visited upon appellant. Appellant then proceeds to make an able and earnest argument to prove that the record does not sustain the findings of the trial court. If the judgment had been in favor of appellant his argument would be very helpful in pointing out evidence in support of such judgment, but in the face of the adverse findings of the trial court the testimony pointed out and relied upon by appellant merely accentuates the conflict in the testimony, and as hereinbefore pointed out it was the province of the trial court to weigh the evidence. Therefore, we deem it unnecessary to discuss at length the argument of appellant as to the insufficiency of the evidence. We are convinced that the evidence, though highly conflicting, supports the conclusion of the trial court that the deed of trust was not executed in fraud of creditors. The following statement of the trial court in its memorandum opinion is amply supported by the evidence:

"Prior and subsequent to the execution of the deed of trust many thousands of dollars were advanced by defendant Barry and his New York associates, primarily to pay off obligations incurred against the Company, first by said Wilson, and after his removal from management, secondly by Sam

B. Jackson, the plaintiff in this action, who succeeded Wilson as manager of said properties.

"The deed of trust was executed more than one year prior to the time that plaintiff became manager of the properties for the Plumas Land Company. It was executed to secure moneys advanced by defendant Barry and his associates, to pay off obligations of said Company and to secure such future advances as might be made.

"The Company was not then obligated to plaintiff, and insofar as the record discloses, was not obligated to any creditors, save those whose claims were being thus paid by said advances."

We are convinced that the evidence supports the finding that the deed of trust was executed for an adequate and valuable consideration and was not executed in fraud of creditors. ■ The following quotation from *Arnold* v. *Hadgis,* 102 Cal.App.2d 88, at page 93 [226 P.2d 641], is quite applicable to the instant case:

"Whether a transfer is in fraud of creditors is a question of fact and not of law, and where there is a consideration for the transfer the burden is on the party attacking it to establish an actual fraudulent intent. ■ Though the burden may shift when a prima facie case is made out, fraud must ultimately be proved by a preponderance of the evidence. (*Asadoorian* v. *Kludjian,* 210 Cal. 564, 565 [292 P. 644].) Defendant did not make out a prima facie case of fraud and did not sustain the burden resting upon him.

"Defendant's assertion of fraud is based on inferences which he alone has drawn from the evidence. The trial court drew contrary inferences and made its findings thereon. The evidence and the inferences to be drawn therefrom must be regarded in the light most favorable to the support of the judgment [citing cases] and the conclusions of the trial court are binding on us."

No other points raised require discussion.

The judgment is affirmed.

Peek, J., and Paulsen, J. pro tem.,* concurred.

A petition for a rehearing was denied May 5, 1954, and appellant's petition for a hearing by the Supreme Court was denied June 9, 1954.

---

*Assigned by Chairman of Judicial Council.