[Civ. No. 8729.  Third Dist.  May 2, 1956.]

FRED J. BONESS et al., Appellants, v. RICHARDSON MINERAL SPRINGS (a Corporation) et al., Respondents.

Laughlin, McKalson & Crable, Laughlin & McKalson, James O. Kibby and Dorothy D. McKalson for Appellants.

Price & Morony and W. E. Rothe for Respondents.

SCHOTTKY, J.—On February 26, 1951, Fred J. Boness, Ruth E. Boness and Tony Ponciano, as judgment creditors of Ben M. Dettling and Martha Dettling, his wife, filed an action in the Superior Court in Butte County against the Dettlings and also against Richardson Mineral Springs, a corporation, seeking to set aside a deed dated March 30, 1949, conveying certain range lands from the Dettlings to Richardson Mineral Springs. The material allegations of the complaint were denied by all of the defendants and the action was tried by the court sitting with a jury in an advisory capacity, a jury having been demanded by the plaintiffs. The jury returned a general verdict in favor of the defendants and against the plaintiffs and in addition returned a special verdict in which they gave the following answers to the interrogatories submitted to them:

1. The defendants Dettling did make the conveyance of their range property to Richardson Mineral Springs with actual intent to hinder, delay or defraud their creditors.

2. At the time of the conveyance defendant Richardson Mineral Springs was not aware of the fraudulent intent of the Dettlings in making the conveyance of their range land to Richardson Mineral Springs.

3. The defendant Richardson Mineral Springs did not have notice of such facts and circumstances as would induce an ordinarily prudent man to inquire into the purpose actuating the Dettlings in making the conveyance.

4. Irrespective of any consideration which the Dettlings may have subsequently received, the consideration received by the Dettlings at the time they conveyed their range land to Richardson Mineral Springs was not disproportionately small as compared to the true and reasonable value of the property.

Thereafter the court made and entered its findings of fact and conclusions of law which were in accordance with the general and special verdicts of the jury, and judgment was entered in favor of defendants. Plaintiffs' motion for a new trial was denied and they have appealed from the judgment.

Appellants make a vigorous attack upon the judgment, the burden of their argument being that the record does not

sustain the verdicts of the jury and the findings of the trial court. Before discussing the specific contentions of appellants it is well to point out once more than in reviewing the sufficiency of evidence to support a judgment, the test to be applied by an appellate court is whether or not there is any substantial evidence to support the findings of the jury or trial court. All questions of the weight of the evidence and the credibility of the witnesses are for the jury and the trial court, and if there is any substantial evidence to support the verdict or finding it cannot be set aside by the reviewing court, although said court may believe the great preponderance of the evidence was the other way. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion of the trier of the facts. All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial judge or jury. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]; *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384].)

Bearing in mind the familiar rule just stated, which we are constrained to say is too often disregarded by many counsel who pay lip service to the rule and then proceed to argue the weight of conflicting evidence before an appellate tribunal, we shall summarize briefly the factual situation as disclosed by the record.

The record shows that the land involved in the instant case consists of approximately 2,485 acres of range land located in a foothill canyon generally northeast some distance from the Chico Municipal Airport in Butte County. The terrain for the most part is rough, rocky, brushy and steep. It is entirely unfenced on three sides and on the fourth side there is a neighbor's fence for a short distance. Approximately 1,870 acres of this land was originally owned by a man named Darge, who in 1933 borrowed $3,500 on it from the Federal Land Bank. In 1938 the Federal Land Bank foreclosed on the loan and acquired title, and in 1939 the bank sold the 1,870 acres on a conditional sales contract to one Simmons. In the same year Simmons sold the land to Ben Dettling. In 1945, approximately half of the contract price had been paid and the remaining half was unpaid and

delinquent. The Federal Land Bank thereupon notified the Dettlings in 1945 that it intended to foreclose because of the delinquency.

When the Federal Land Bank started to foreclose, Dettling contacted Bob Richardson as he wanted to borrow money to pay off the amount owed to the Federal Land Bank which, at that time, amounted to approximately $2,073.04, in addition to interest. Bob Richardson did not handle the loaning of money by the Richardsons, so Dettling was referred to Ned Richardson. However, it occurred to Bob Richardson that this might be a good opportunity to effect an exchange of properties as an inducement for the loan. Richardson Mineral Springs had approximately 900 acres known as the Noes place which it had been unable to sell in 1945-1946, although it had been listed for some time at $2.00 per acre.

The Noes acreage was adjacent to the Dettlings' range, but it was not contiguous to the Richardson ranges. On the other hand, Dettling had approximately 320 acres of range land (being part of the Darge 1,870 acres) which land was adjacent to the Richardson ranges, but not contiguous to the Dettling range.

Richardson Mineral Springs, a corporation, hereinafter referred to as the "Richardsons" agreed to loan the Dettlings $4,000 to be secured by the lien of a deed of trust on their range lands, provided that as a part of said transaction the Dettlings would exchange the aforementioned 320 acres of the Darge place for 900 acres of the Richardsons. Thereupon, the Richardsons loaned the Dettlings the sum of $4,000 cash evidenced by a note, dated November 30, 1946, from the Dettlings to the Richardsons in the sum of $4,000, bearing interest at 4½ per cent payable quarterly beginning February 1, 1947, with the principal payable in installments of $400 per year beginning November 1, 1947. The Dettlings paid off the Federal Land Bank with part of the cash loan proceeds and received a deed to said range lands. The revenue stamps on the deed indicated the consideration therefor in the sum of $3,500. Simultaneously therewith, Dettlings deeded the 320 acres to the Richardsons, the Richardsons deeded the 900 acres to the Dettlings, and the Dettlings executed and delivered to the Richardsons a deed of trust (as security for said loan) on their then total range constituting about 2,485 acres. All these instruments were recorded on December 13, 1946. Subsequently, the Dettlings borrowed, on or about January 17, 1948, from D. W. Ramme the cash sum of $1,500

evidenced by a promissory note and secured by a second deed of trust on the same range lands which were already subject to the first lien of the Richardsons' deed of trust.

It appears that Dettling was about 63 years of age, suffering from heart trouble and that his wife had been in poor health for some time. It appears also that he was not very successful in a business way and that he had contracted a number of financial obligations which he was unable to meet, among them being an unsecured promissory note in the sum of $7,898.32 in favor of appellants Fred Boness and Ruth Boness, his wife, and another unsecured promissory note in the sum of $4,781.64 in favor of appellants Fred Boness and Tony Ponciano. Appellants, through their attorney James O. Kibby of Orland in Glenn County, were pressing the Dettlings for payment. On February 10, 1949, Mrs. Dettling wrote the Bonesses requesting further time to pay the notes, and receiving no reply wrote a similar letter on March 3, 1949. On March 3, 1949, prior to receiving Mrs. Dettling's second letter, Attorney Kibby, on behalf of appellants, filed two actions in the Superior Court in Glenn County on said promissory notes. The summonses in said actions were served on the Dettlings in Butte County on March 5, 1949, but no attachment was issued in either action.

Meanwhile, the Dettlings' obligations to the Richardsons and to Ramme were delinquent, and the Richardsons and Ramme wanted to foreclose their respective deeds of trust. Kibby had never notified the Richardsons of any of the claims of appellants herein. The Dettlings had never told the Richardsons about their debts to the appellants herein and, furthermore, the Richardsons knew nothing whatsoever about the Dettlings' obligations to the appellants herein, although appellants were aware of the deeds of trust against the Dettling property and had tried to help the Dettlings obtain a new loan. The Richardsons had advised Rothe, an attorney for the Dettlings, that it would be necessary to foreclose on the two deeds of trust and a meeting was held at Richardson Springs on March 29 or 30, 1949. At this meeting no mention was made whatsoever by anyone of Dettlings' obligations to the appellants herein, nor did Dettling or anyone else make any mention of the suits then pending against the Dettlings in the Glenn County Superior Court. It was agreed that, in lieu of the Richardsons' foreclosing the Dettling trust deed, the Dettlings would deed the range lands to the

Richardsons in consideration of (1) the cancellation of the unpaid principal and interest under their note secured by the first deed of trust, (2) the payment by the Richardsons of Dettlings' obligation to Ramme secured by a second deed of trust on said range lands, (3) the payment of certain delinquent real and personal property taxes owing and unpaid by the Dettlings, and (4) the leasing of said range lands by the Richardsons to the Dettlings. Rothe wanted the Richardsons to pay $1,000 additional cash at that time, but the Richardsons refused to do so, stating that they did not think the range land was worth it. The range lands were conveyed by the Dettlings to the Richardsons by deed dated March 30, 1949, which was recorded on March 31, 1949.

At that time, the Richardsons paid to the Dettlings a consideration equivalent to $5,752.37 as follows: (1) the Richardsons cancelled Dettlings' obligation under the note dated November 30, 1946, secured by a first deed of trust on the range lands, which unpaid obligation amounted to $3,600 principal, plus $288.18 interest, (2) Richardsons paid and discharged the Dettlings' obligation to Ramme evidenced by the note dated January 17, 1948, secured by a second deed of trust on said range lands and under which the total unpaid principal and interest amounted to $1,053.09, and, in addition, the Richardsons paid $4.00 for the reconveyance and $2.00 for recording the same, and (3) the Richardsons paid and discharged delinquent real and personal Butte County property taxes owing by the Dettlings in the sum of $805.10. The trial court found that, on March 30, 1949, the market value of said range land was $5,650 on the capitalization theory, $6,200 on the comparison approach theory, and $5,200 on an animal unit basis.

Following the meeting, a lease was prepared by Rothe as attorney for the Dettlings, but it was subsequently altered by Mr. Charles Wetmore as attorney for the Richardsons. This lease agreement dated March 31, 1949 was signed on April 1, 1949. It was not recorded and no one requested that it not be recorded. The lease was for a term of 15 years at an annual cash rental of $540 per year with an option to renew for a further like term on the same conditions, subject to cancellation, however, in the event of the death of the lessees. It contained provisions as to nonassignability without the consent of the lessor and the right of the lessor to terminate in the event of bankruptcy or assignment for the benefit of creditors or upon the appointment of a receiver

for the lessees. The trial court found that the annual rental value of said range lands, as of March 30, 1949, was $700 on an animal unit or share crop basis, and $630 on a cash rental basis.

Following the overruling of demurrers by Rothe, as attorney for the Dettlings in the two actions filed by appellants in Glenn County, those actions went to trial on June 8, 1949, no one appearing for the Dettlings at the trial, and judgments were entered against them in the two actions, one judgment being for $8,143.33 and the other being for $5,131.24. A writ of execution was issued in each action, which writs were sent to the sheriff of Butte County with instructions to serve the same upon the Richardsons so as to levy on the proceeds from the sale of this range land under the deed recorded March 31, 1949. The writ was returned unsatisfied. This was the only writ of execution which was ever issued in either of said actions.

The Dettlings' range lands had not been subjected to the lien of any writ of attachment during the pendency of these Glenn County suits on the appellants' promissory notes, and said range lands were never attempted to be subjected to the lien of the judgments entered in said actions because no execution was ever levied thereon nor any abstract of judgment recorded. Dettling was brought in twice by appellants on orders of examination of judgment debtor. He was first examined on September 20, 1949. He was again examined on October 16, 1950. The lease by the Dettlings to the Richardsons was brought to the attention of the appellants.

By the fall of 1950, the Dettlings were still unable to operate the leased range lands by keeping them stocked with cattle and by this time the Dettlings were in default under the provisions of the lease for the payment of rental. Meanwhile, all taxes thereon had been paid by the Richardsons. The Richardsons decided to terminate said lease, since the Dettlings were in default, because an opportunity presented itself to exchange these range lands for other more useful property. In order to obtain immediate possession without litigation, a lease cancellation agreement was made between the Richardsons and the Dettlings. This agreement cancelling the lease was dated January 6, 1951. The instant action was filed on February 26, 1951, and a *lis pendens* was recorded on February 27th.

Appellants first contend that "the transaction, as shown

by the pleadings and in the undisputed evidence, is fraudulent upon its face.''

Appellants argue that where the owner accepts a grant of property from the lessee and as part of the consideration and an integral part of the transaction, gives back a lease of the same property, expressly made inaccessible to the lessee's creditors, present or future, he enables the lessee to divest himself of his assets and to reserve a benefit personal to himself of the very sort frowned upon by the law. They argue that the clause making the lease inaccessible to the lessee's creditors, which, they assert, shows conclusively actual intent on the part of both parties to the lease to hinder, delay and defraud creditors, was inserted at the insistence of Richardson Mineral Springs and that Richardson should not be permitted to indulge its desire to be charitable and to know who its neighbors were going to be, at the expense of the creditors, who lost their right to bid in the property at the trustee's sale because Richardson, rather than foreclose its deed of trust, chose to benefit the Dettlings with an interest in their land which was immune from creditors' claims.

Appellants contend that the reservation by a grantor of any interest in the property or benefit to him or his family in the conveyance thereof, whether manifest or concealed, with intent to defraud his creditors, is fraudulent and void as to creditors. Appellants urge that an absolute conveyance of attachable property, whether real or personal, with a secret reservation for the benefit of the vendor, is fraudulent in law whether the interest reserved is of great or small value, and whether the intention of the parties is honest or fraudulent. Appellants argue that since the lease was not recorded and since on order of examination, both Mr. Dettling and Mr. Rothe stated that the lease ran from year to year instead of 15 years with an option for another 15 years, to all intents and purposes this part of the transaction was kept secret.

Appellants contend that the special verdict of the jury and the finding of the court that the Dettlings, by means of the transfer, actually intended to hinder, delay and defraud their creditors are amply supported by the evidence. Appellants assert that the transaction was consummated three weeks after the Dettlings had been served in the two actions and they had been writing asking for grace to pay off the notes. The only way Dettling could keep his land was by divesting him-

self of title and taking back a lease which his creditors could not reach.

As hereinbefore stated, the verdict of the jury and the finding of the trial court was that the Dettlings by means of the deed to Richardsons intended to hinder, delay or defraud their creditors. Respondents dispute the correctness of this finding, but concede that there is support for it in the evidence. However, we do not believe that it can be held upon the record here that the transaction was fraudulent upon its face so far as respondent Richardson Mineral Springs is concerned, as we shall point out hereinafter in discussing the further contentions of appellants.

Appellants also contend that the special verdict of the jury and the finding of the court that defendant Richardson Mineral Springs was not aware of the fraudulent intent of the Dettlings in making the conveyance and that Richardson did not have knowledge of facts sufficient to put a reasonable man on notice of the fraudulent intent of the Dettlings are not supported by the evidence. Appellants argue that there was testimony of Mr. Rothe that he had told Ned Richardson of pressing obligations of the Dettlings and that he tried to get another $1,000 from Richardson for the Dettlings to pay these obligations. Mr. Richardson testified to the effect that Dettling had told him he was having financial troubles. Appellants call attention to the fact that on the same day Dettling's attorney prepared a demurrer in one of the actions, he and Richardson signed the lease, and that Mr. Rothe, who was aware of the pendency of the actions, was present at the meeting at Richardson Mineral Springs held a day or two before the transaction was consummated.

Appellants further contend that the special verdict of the jury and the finding of the court that irrespective of any consideration which the Dettlings may have subsequently received, the consideration received by the Dettlings at the time they conveyed their range land to Richardson was not disproportionately small as compared to the true and reasonable value of the property, are not supported by the evidence. Appellants assert that the "fair consideration" referred to in the Uniform Fraudulent Conveyance Act, does not mean "fair to the debtor," but means "fair to the creditors" in that the property or its fair equivalent remains available to satisfy the claims of creditors. Appellants argue that with regard to the adequacy of the consideration paid by way of liens and encumbrances against the property, amounting to

$5,752.37, there is a great range in the evidence elicited from both plaintiffs and defendants as to the value of the property, all of which are greater than the amount paid.

Appellants also contend that where there exists an actual intent to hinder, delay or defraud creditors, it is immaterial whether the debtor is rendered insolvent by the transfer, and it is also immaterial whether consideration was given for the transfer.

Respondents, in reply, argue that there is sufficient evidence to support the special verdict and the findings that Richardson Mineral Springs was a purchaser for fair consideration without knowledge of the fraud at the time of the purchase on March 30, 1949, and without knowledge of sufficient facts to put a reasonable person on notice. They point to evidence in the record by one of the expert witnesses who testified as a land appraiser that the market value of the land was $6,000 on the date the deed was executed and to other evidence to the effect that it was worth less. They concede that there was evidence giving a much higher valuation, but argue that such evidence merely created a conflict and there was ample support in the record for the court's finding that on March 30, 1949, the market value of said range land was $5,650 on the capitalization theory, $6,200 on the comparison approach theory, and $5,200 on an animal unit basis.

Respondents point out further that the record shows the following as to the situation at the time the deed was executed:

1. The Richardsons knew nothing whatsoever about the Dettlings' obligations to the appellants herein. Furthermore, no one had ever told the Richardsons that the appellants herein were after the Dettlings for money.

2. The Dettlings had never told the Richardsons that they were indebted to the appellants herein.

3. Mr. Kibby, the counsel for appellants herein, never communicated with or notified the Richardsons concerning the indebtedness of the Dettlings to the appellants herein.

4. At the time of the show-down meeting at Richardson Springs on the 29th or 30th of March, 1949, no mention was made whatsoever by anyone of the Dettlings' obligations to the appellants herein and, furthermore, neither Dettling nor anyone else made any mention of the suits then pending against the Dettlings brought by the appellants herein in the Glenn County Superior Court.

5. Ben Dettling had discussed with his attorney, Mr. Rothe,

all of his outstanding debts and obligations and all that Rothe can remember Dettling mentioning to him were his debts to Richardsons, Ramme, Butte County for taxes, and approximately $1,000 worth of miscellaneous debts.

6. The Richardsons knew that the Dettlings owed them money secured by the first deed of trust; that the Dettlings owed Ramme money secured by the second deed of trust; and that some of their Butte County taxes were delinquent and unpaid. In addition, the Richardsons knew that the Dettlings owed some doctor bills. Ned Richardson testified that doctor bills were the only thing that Ben Dettling ever told him about along this line. Mr. Rothe, the attorney for the Dettlings, attempted to get the Richardsons to pay an additional $1,000 in order to enable the Dettlings to clear up some miscellaneous bills. The Richardsons refused to pay the additional $1,000 on the basis that the range land was not worth the additional amount requested.

While appellants have made an able and earnest argument in support of their contentions, it is apparent that the entire argument is predicated upon their assumption that the evidence in the case can only be given the construction that the deed from the Dettlings to the Richardsons was not only fraudulent on the part of the Dettlings, but that the Richardsons were aware of its fraudulent purpose or had notice of facts sufficient to put it on notice of such purpose.

We are unable to agree with appellants' contention that the evidence is only susceptible of such construction. We believe that there is ample support in the record for the conclusions reached both by the jury and the trial court that respondent Richardson Mineral Springs was not aware of any fraudulent intent on the part of the Dettlings; that said respondent had no notice of such facts and circumstances as would induce a prudent man to inquire into such purpose; and that the consideration paid by said respondent to the Dettlings was adequate and fair. We believe also that the record supports the finding of the court that the lease agreement from respondent Richardson Mineral Springs to the Dettlings was not made for the purpose of defrauding creditors or with the intent on the part of said respondent to hold the property in a secret trust for the Dettlings. Neither the fact that the lease was not recorded nor that it contained a clause that it could be terminated by the lessor ''if the lessees shall make any assignment for the bene-

fit of creditors or shall be adjudged a bankrupt, or if a receiver is appointed for the lessees or their assets or of their interest under the lease'' compelled a finding that the lease was executed with fraudulent intent because it is not unusual for leases not to be recorded nor is it unusual for a lease to contain such a clause. These facts, as well as all other evidence, were for the consideration of the trier of facts and we cannot say upon the record in the instant case that the findings of the jury and the trial court are not supported by substantial evidence.

It would serve no useful purpose to discuss the authorities cited by appellants as the law with reference to fraudulent conveyance is well settled. If the evidence could be given no other interpretation than the one which appellants give it we would, of course, be compelled to reverse the judgment, but unfortunately for appellants there is considerable conflict in the evidence, and we are bound by the findings of the jury as adopted by the trial court.

What was said by the court in *Arnold* v. *Hadgis,* 102 Cal. App.2d 88, at page 93 [226 P.2d 641], is quite applicable to the instant case:

''Whether a transfer is in fraud of creditors is a question of fact and not of law, and where there is a consideration for the transfer the burden is on the party attacking it to establish an actual fraudulent intent. Though the burden may shift when a prima facie case is made out, fraud must ultimately be proved by a preponderance of the evidence. (*Asadoorian* v. *Kludjian,* 210 Cal. 564, 565 [292 P. 644].) Defendant did not make out a prima facie case of fraud and did not sustain the burden resting upon him.

''Defendant's assertion of fraud is based on inferences which he alone has drawn from the evidence. The trial court drew contrary inferences and made its findings thereon. The evidence and the inferences to be drawn therefrom must be regarded in the light most favorable to the support of the judgment. [Citing cases.]'' (See also *Jackson* v. *Burke,* 124 Cal.App.2d 519 [269 P.2d 137].)

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 28, 1956, and appellants' petition for a hearing by the Supreme Court was denied June 27, 1956.