[Civ. No. 12253. First Dist., Div. Two. Mar. 1, 1943.]

H. R. BOLANDER, Jr., as Executor, etc., Appellant, v. MARION R. THOMPSON, Respondent.

GOODWIN TUSTING et al., Appellants, v. MARION R. THOMPSON, Respondent.

Vincent Surr and Morgan V. Spicer for Appellants.

James R. Agee and Minett F. Hallmark for Respondent.

NOURSE, P. J.—These were actions by the executor of Osborne Tusting's Last Will and Testament and Osborne Tusting's son and second wife as Osborne Tusting's heirs at law to set aside gifts intervivos to defendant. The two cases were consolidated for trial as they involved the same state of facts, the heirs' suit having been filed prior to the appointment of Bolander as executor. The plaintiffs appeal from judgments for defendant in both cases.

In August, 1939, following an accident to both Osborne and Leona Tusting on Treasure Island, the defendant, Marion Thompson, was hired to take care of Osborne Tusting as a practical nurse. In October, 1939, Osborne Tusting went to stay at a sanitarium and in November, pursuant to Osborne Tusting's consent, Leona was granted an interlocutory decree of divorce and a property settlement was made. In December, 1939, Osborne Tusting bought a house for $4,500 which he deeded to defendant. During the months of December and January he bought a car which he transferred to defendant; he gave defendant a bill of sale to the household furnishings; he made her a beneficiary of a $1,000 life insurance policy; he opened two joint accounts in his and defendant's names; and he opened one account in defendant's name alone. On May 15, 1940, he wandered away from the home in which he was living, and which he had deeded to defendant, and was found three days later in the Alameda estuary.

It is these various gifts which the plaintiffs attack; they point to testimony that prior to defendant's entrance into the household Leona and Osborne Tusting were happily married, that defendant kept him doped, and that she told him lies about his family. They urge that a confidential relationship was proved between nurse and patient, that therefore a presumption of undue influence arose which shifted the burden of proof to defendant to show that she did not unduly influence the deceased, and that defendant did not carry the burden of proof.

The defendant's evidence disputes every material fact which the plaintiffs sought to prove. She expressly denied that she

had kept the deceased under the influence of narcotics, and testified that such medicine as was given the patient was prescribed by the attending physician. In this she was confirmed by the latter. She directs attention to the undisputed evidence that, until a short time before his death, the deceased had taken care of his business in San Francisco, had attended a special meeting of the board of directors at his home in Alameda, and was at all times in full possession of his mental faculties. The defendant denied the charge that she brought about the divorce and points to the testimony given by Mrs. Tusting in the divorce case. That case was heard before the same trial judge. A complete transcript of her testimony is included in the record here. Her testimony in that case is wholly inconsistent with the claims she now asserts. The defendant further points to the undisputed evidence that Mrs. Tusting secured the divorce upon independent advice, and without influence on the part of this defendant, that she obtained a satisfactory property settlement, and waived all further claims to the estate of her husband.

The evidence relating to the treatment of his son shows that, during the period which he claims that his father was under the influence of defendant, gifts were made to him of valuable real property in San Francisco, Hayward, and Los Banos, two insurance policies totaling $3,000, and that, having previously given the son forty-seven shares of the stock of the corporation under which decedent's business was conducted, he left a will in which he gave his son the balance of the corporate stock.

All the competent evidence relating to the transfer to the defendant of the real property and that relating to the gifts of personalty shows that the decedent was acting under independent advice, in full possession of his mental faculties, and was not under undue influence or coercion. To rebut this showing the plaintiffs are forced to rely upon the suspicions and conjectures which they draw from the fact that the defendant had the opportunity to use influence upon the deceased, and the fact that she obtained benefits from the relation.

For a reversal the appellants argue that a confidential relation existed between the patient and the nurse, and that the presumption of undue influence was not overcome by

satisfactory evidence. The first portion of appellants' statement cannot be accepted as a settled rule of law. None of the cases cited by them, and none that we have been able to find, holds that a confidential relationship arises in all cases between a patient and nurse upon proof alone of the relation of patient and nurse. The accepted rule is that such a relation may exist upon showing of special circumstances of the particular case. This principle is stated in 15 C.J.S., p. 823 as follows. "Depending, of course, on the circumstances of each case, the term has been held to include the relationship existing between a husband and father-in-law, a husband and wife, a father and son, a municipal officer and one to whom he delegates the performance of his duties, an oil company and its district geologist, an owner of a business and his manager, a parent and one of his children, a partner and his copartner, a patient and his nurse. . . ." In 23 Am.Jur., p. 764 we find this statement: "It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal. It may be moral, social, domestic, or merely personal. Hence, the rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another."

Here the plaintiffs alleged that "from and after November 12, 1939, defendant was the sole nurse, housekeeper and confidante of Osborne Tusting. . . ." In the findings the words "and confidante" are stricken out. The respondent states in her brief that this finding was prepared by appellants and that the stricken words were lined out by the trial court. This is not denied. It was also found that the deceased was "under the care, but not under the control or influence or domination of said defendant." The trial court further found "That from and after November 12, 1939, the mind or will of Osborne Tusting were not subject to the will of or under the domination of the defendant; the said Osborne Tusting did not make the deed hereinabove referred to because of or while acting under or by reason of the will of or any domination of the defendant." And that "Defendant

did not thereafter by importunities, blandishments, pretended affection, or by the use of narcotics or sedatives or by means of her will, exercise her will upon said Osborne Tusting. Defendant did not obtain complete domination over the will and mind of Osborne Tusting or his complete subservience to her will. Defendant did not instill in said Osborne Tusting a fear of his wife or induce him to leave his home or wife. Defendant did not induce Osborne Tusting to make her his sole nurse and confidant.''

Undue influence has been defined in 6 Cal.Jur., p. 70 as follows: ''Undue influence has been defined to be that kind of influence or supremacy of one mind over another by which that other is prevented from acting according to his own wish or judgment.'' (See sec. 1575, Civ. Code.)

█ It may be granted that the appellants endeavored to prove undue influence, but it should be conceded that the evidence was in sharp conflict. We must assume that the trial court believed the evidence offered by respondent. Therefore, if we may assume that a confidential relation existed between the parties which created the relation of trusteeship and brought into play the presumption of section 2235 of the Civil Code, we are still confronted with the conflict of evidence rule, since that presumption, like those mentioned in section 1963 of the Code of Civil Procedure is a rebuttable one. Now the appellants urgently contend that ''having proved the confidential relation'' the burden of proof shifted to respondent to show that undue influence was not used. The question of the shifting of the burden of proof is not a settled one. Ordinarily the party who brings a suit is required to prove his right to recovery. If he relies entirely upon a presumption he has simply made prima facie proof of his case. If such presumption is rebutted by competent evidence there is then a conflict which the trier of the case must decide. In the case at hand the question of the burden of proof, or of the shifting of the burden, is not material. The material issue is the fact of undue influence, as distinguished from the suspicions and conjectures which may arise from the conduct of the party. When the trial court has the witnesses before it and determines that that one should be believed which supports one side of the issue, the findings based upon that evidence should not be disturbed notwithstanding the question

of the burden of proof. Under those circumstances we must assume that the trial court found that the burden of proof was sustained, otherwise it would not have made the finding.

We see no purpose in appellant's argument and citation of authorities on the right to introduce evidence of a telephone call to one of decedent's insurance carriers. The testimony was offered by appellants and received subject to a motion to strike out. Such motion was made, but not acted on. The testimony is all in the record and proves no material element of the case.

The appellants close their brief with a bitter condemnation of the conduct of the trial judge. It does not appear to be an assignment of error, or a claim of misconduct. The burden of their complaint is that the learned trial judge was too severe in requiring them to adhere to the established rules of procedure, particularly in the examination of witnesses. They complain particularly of the action of the trial court in limiting one of their counsel while on the witness stand to the same restrictions imposed upon other witnesses, in denying him and other witnesses the right to express their conclusions and inferences relative to the transactions between the parties, and in refusing to permit them to ask leading questions. It is the function of the trial court to insist upon the orderly conduct of the trial and to protect the witnesses against the use of leading and improper questions. We find no error in the matters complained of.

The judgments are affirmed.

Spence, J., concurred.

A petition for a rehearing was denied March 31, 1943, and appellants' petition for a hearing by the Supreme Court was denied April 29, 1942.