229 P.2d 248

**MAISH et al. v. VALENZUELA.**

No. 5274.

Supreme Court of Arizona.

Decided March 26, 1951.

Fred W. Fickett, Robert S. Tullar, Tucson, for appellants.

Carlos G. Robles, Tucson, for appellee.

DE CONCINI, Justice.

This is a family law suit. Plaintiff below, Teresa de Valenzuela, appellee here, is the grandmother of the Maish children, appellants. Rosario Maish, daughter of the appellee and mother of appellants, was the owner of 640 acres of land in Pima County described as Section 27, T. 11 S., R. 9 E. and hereafter referred to as the ranch.

Rosario died in July 1936 about 2 years after the death of her husband. Neither of their estates have been probated. Appellants, natural children of Rosario, were minors at the time of their mother's death and were her legal heirs. There was a house, well, corrals and approximately 50 head of cattle on the ranch.

Taxes on the ranch had not been paid and were delinquent since 1931. The parties stipulated that the ranch was sold for taxes on December 7, 1939 for the years 1931 through 1938; that Antonio Valenzuela, husband of appellee, bought the tax certificate of purchase from the Pima County treasurer. Antonio died in 1941. In 1946 appellee was issued a treasurer's deed for land in question for want of redemption.

In July 8, 1946, appellee filed her complaint to quiet title to the ranch property alleging her ownership in fee simple by virtue of the issuance to her of the tax deed; that defendants claimed an estate or interest adverse to, and in conflict with, her title. The defendants, four grandsons answered, the two minor boys by a guardian ad litem, denying appellee's right to or title in the property and asserting their own claim. In addition the two older boys filed a counterclaim, in which they alleged in substance that plaintiff-appellee and her husband were charged with the duty of probating the estate of their mother, Rosario Maish; that the value of the ranch and its chattels was more than sufficient to pay all taxes, funeral expenses, expenses of last illness, debts and probate costs; that appellee deliberately failed to do so with the purpose and intent of depriving the minor heirs of their estate. They therefore prayed that appellee be decreed to hold the land as trustee for the benefit of the heirs-at-law.

Upon hearing, the court sitting without a jury found the allegations of the plaintiff's complaint to be true; and title was quieted

in plaintiff-appellee. From this judgment and decree appellants assign error.

■ The theory of the appeal is that the lower court erred in failing to decree appellee a trustee of the land in favor of appellants on the basis of either a constructive or express trust. Appellants' first contention is that an express trust was created on the basis of a purported oral agreement between appellee and Rosario Maish whereby appellee and her husband were to be allowed the use and control of the ranch in return for which they were to pay taxes and other charges and turn the ranch over to the children when they reached the age of twenty-one. The situation on this point is that Fred Maish, one of the appellants, testified to such an agreement and was corroborated by an uncle, son of appellee, Telesforo Valenzuela. However, this testimony was contradicted by appellee and other witnesses. The judgment being in favor of the appellee, this conflict must be resolved against the appellants as it constitutes a finding that such agreement did not exist.

The other contention is that appellee assumed a fiduciary or a confidential relationship with appellants and thus became a guardian de facto of appellants and should not be allowed to be unjustly enriched. To substantiate this claim it is pointed out that appellee testified that she and her sons had the actual care and custody of the appellants during their minority; that she and her sons were in actual possession and control of the property at all times.

Appellee's son Manuel, and Fred Maish, one of appellants, lived on the ranch. Fred Maish was the oldest of the grandchildren. He stayed on the ranch until he reached 18 years of age. Manuel sold most of the cattle for $900 and paid the money over to Francisco, another son of appellee, with which he paid bills for Rosario and her deceased daughter named Angelia. Appellee's evidence proved Francisco was the agent for appellee. It was he who paid the treasurer for the tax certificate of purchase in his father's name. He continued paying the taxes in his mother's name to 1946. Appellee testified she always paid the taxes on the ranch. Francisco testified he paid them for appellee's account.

After the death of Rosario the appellee took three of the appellants into her home for a period of four months. She then placed them with her children collecting money for their support from the Pima County Welfare except for the support of Charley Maish which was collected by Francisco, her son and agent.

Appellants offered Exhibits marked 18–19–21–22 which were identified but not admitted. They should have been admitted along with Exhibits 1 to 17 and No. 20. Exhibits 18–19–21–22 were certificates of health and brand inspections of the State Livestock Sanitary Board showing the sales of cattle belonging to Rosario's estate by Antonio Valenzuela, husband of appellee.

The uncontradicted evidence may be summarized as follows: The estate of Rosario,

both real and personal was in the hands of appellee's husband and her sons. One son, Manuel, who lived on the ranch sold the cattle and turned the proceeds over to another son, Francisco, the latter being appellee's agent. Appellee's husband, Antonio, sold some of the cattle. No accounting was made by either of them to the appellants. Appellee herself collected support money from the Pima County Welfare for some of the appellants while they were in the home of appellee's children. Francisco and Antonio purchased the ranch for unpaid taxes in Antonio's name. Appellee inherited the ranch from her husband's estate.

The failure of appellee's agent and her predecessor in interest to protect the interest of the appellants whose persons and property they assumed the management of, and to purchase the ranch for taxes for the ultimate benefit of the appellee, constituted a fraud against the appellants and is imputed to the appellee. From the foregoing facts we hold that as a matter of law the appellee is a guardian de facto of appellants.

The next question is: does the appellee as the guardian de facto hold this property in trust for the appellants? The law is clear that in such case, the appellee is considered the grandchildrens' guardian and is responsible for the care of their estate.

DE FACTO GUARDIAN—"One who takes possession of property of an infant or incompetent person without right or lawful authority is treated in equity as a 'de facto guardian'". In re Mize's Guardianship, 193 Okl. 164, 142 P.2d 116, 117.

"The grandmother of a minor under general guardianship, after the court's order taking her out of the custody of the general guardian, and giving her custody to such grandmother, became a special or 'de facto guardian' of the person of such ward, charged by Civ.Code 1913, par. 1123, with her custody, support, education, and with fixing her residence." In re Harris' Guardianship, 17 Ariz. 405, 153 P. 422.

"The term 'quasi guardian,' or 'guardian de son tort,' has been applied to persons who, without legal appointment or qualification, assume the functions of a guardian by exercising control over the person, or estate, or both, of a minor * * *." Zeideman v. Molasky, 118 Mo.App. 106, 94 S.W. 754, 756.

A guardian cannot profit from its ward's estate. Giovoni v. Rescorla, 69 Ariz. 20, 207 P.2d 1124; Shackelford v. Swantek, 62 Ariz. 86, 153 P.2d 534; Restatement of the Law (1937) Restitution, Sec. 160–b, p. 642. "A constructive trust is imposed not because of the intention of the parties but because the person holding the title to the property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property."

The judgment is reversed with instructions to the trial court to enter judgment in favor of appellants on their cross complaint

430

decreeing that the appellee holds the legal title to the property in trust, and that she convey the title to appellants upon their payment to her the amount she has paid for taxes on the land in dispute; appellants to have their costs in the trial court and on this appeal.

Judgment reversed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.