### In re LEONARD.
### No. 56369.

United States District Court
S. D. California, Central Division.
March 31, 1954.
Modification Denied July 6, 1954.

---

3. 1926, 200 Cal. 132, 251 P. 907, 910, 49 A.L.R. 1025.

Miller, Vandegrift & Middleton, by Austin Clapp, Los Angeles, Cal., for bankrupt.

Russell B. Seymour, Los Angeles, Cal., for objecting creditors Ray S. Madison and Katherine S. Madison.

TOLIN, District Judge.

The Referee has ordered that a discharge in bankruptcy be denied bankrupt. The order incorporates Findings of Fact which lead to conclusions of law to the effect that bankrupt has committed acts denounced by Sections 14, sub. c(1) and 14, sub. c(3) of the Bankruptcy Act, 11 U.S.C.A. The language of the statute provides in applicable part:

"Sec. 14. *Discharges, when granted.* * * *

"(c) The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under this Act; * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; * * *."

In essential part, the Findings of Fact are that the bankrupt and his wife obtained money from Pacific Finance Loans in the amount of $311.90 by making and delivering to said creditor a materially false statement in writing, signed by the bankrupt and his wife, respecting their financial condition. The statement averred that bankrupts were indebted for sums aggregating not in excess of $1,217.55 and that they had no other debts. Their indebtedness actually was not less than $10,000. The Referee found that the false statement was relied upon by the loan company in making the $311.90 loan.

It is not the loan company that objects to the discharge but another

creditor. However, this does not affect the validity of the objection, In re Haggerty, 2 Cir., 1948, 165 F.2d 977, providing that the ground for denying the discharge is supported by the evidence.

■ In support of the objection, Mr. Jagoe testified that he was manager of the loan company to which the written statement was given. Counsel who called Mr. Jagoe pursued the not uncommon but entirely unreliable and legally forbidden practice of using leading questions in interrogating this witness as to the important elements of his case. The approach in Mr. Jagoe's testimony to the element of reliance upon the statement appears in the record in this language:

"Q. 'It was on the basis of that statement along with other factors that you did make the loan.'"

After that sequence of words, which is more of a statement than a question, the witness, who had earlier claimed disorientation to the subject and said he didn't believe that he had handled the transaction, replied "Yes". Counsel then stated, "You did rely upon that statement?" Again the approach was by statement of a conclusion by counsel, not interrogatory in form but rather a declaration of an ultimate fact or attitude. There probably is no more highly leading and suggestive type of question. The proper uses of such questions in a court room are limited to cross-examination or to noncontroversial matters. Leading questions on direct examination are improper. In re Wright-Dana Hardware Co., D.C.N.Y.1912, 199 F. 632; Bolander v. Thompson, 57 Cal.App.2d 444, 134 P.2d 924. See 58 American Jurisprudence, Witnesses, Sec. 568. This 'topic is extensively discussed in Wigmore on Evidence, Third Edition, Section 768. It is an especially important part of the Court's consideration here for not only counsel but the Referee freely engaged in this method of questioning in presenting the case of the objecting creditor, but the Referee *sua sponte* forbad counsel for the bankrupt to employ similar tactics in the direct examination of his own witness.

Even after having heard those suggestions and having given his assent to the advocate's statement of what he wanted from the witness, Mr. Jagoe, in response to the proper question, "Did you make this loan, Mr. Jagoe?" stated, "No, sir, I did not." A short time later, it appears that the witness was handed a document, apparently in his own handwriting but unidentified for the record. With the help of this document, either as an aid to present recollection or on its strength as a memorandum, the witness then stated that he remembered making the loan. Not until after he had assented to the conclusion-laden propositions of the leading and suggestive questions did Mr. Jagoe evidence enough recollection of the subject to provide a proper basis for his giving *any* testimony of the details surrounding the making of the loan. His recollection still was not good enough to enable him to give even the substance of conversations, and the witness retreated to avoidance of questions by such words as, "I can't recall" or "I really wouldn't know". It is to be emphasized that his interrogation was all before a Referee who injected partisan advocacy and his own conclusions into the inquiry. At a later date the witness returned for further testimony. This latter proceeding was before a different Referee, at a later date. The same witness had a considerably refreshed memory at that later hearing. The only conclusion the Court can reach from a reading of all of Mr. Jagoe's testimony is that he had not refreshed his recollection before coming to the stand at the first hearing. His testimony that first day was typical of a witness who receives a *duces tecum* subpoena, comes to Court without giving the matter more attention than to assemble the subpoenaed papers, and then gives his evidence without having refreshed his recollection. By the time of the second session, there apparently had been sufficient activity legitimately to stimulate the witness' recollection and the record

indicates counsel had, by that time, bothered to discuss the evidence before the formal presentation. The witness himself had suggested omissions in the prior inquiry and came forward with a creditable statement which tended to corroborate the bankrupt's testimony that the loan had been consummated prior to the execution of the statement and without reliance by the loan company upon either the statement or the supposed facts set forth in it. It even appeared that because of the small amount of the loan, a statement from an established borrower, such as the bankrupt, was not required by the ordinary practice of the loan company.

It is important to note that the Referee who heard the first day's testimony of Mr. Jagoe decided the issue but did not hear the testimony taken at the later session. The Court applies the presumption of regularity of official conduct and presumes that the Referee read the transcript of testimony taken at the session presided over by a brother Referee. The point is now made that it was the Referee's privilege to believe one day's testimony and disbelieve a succeeding day's contrary evidence by the same witness. It is argued here that the duty of appraising the conflict is exclusively that of the Referee. The reason reviewers of original judicial decisions are ordinarily bound by the original trier of facts resolution of conflicts is that the original trier of facts heard the witnesses, saw the participants at the very time of inquiry, and was in a unique position to appraise the various ingredients of the evidence. This general rule is embodied in Rule 53(e)(2) and Rule 52(a), 28 U.S.C., which read, as follows:

Rule 53(e)(2):

"In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous."

Rule 52(a):

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."

The Court pointed out in Carter Oil Co. v. McQuigg, 7 Cir., 1940, 112 F.2d 275, 279:

"Where the question is one of veracity it is clear that the appellate court should give controlling weight to the trier of fact who saw and heard the witnesses. This is well established. *Where the testimony consists of documentary evidence and depositions, the master is in no better position to determine an issue of fact than a reviewing court.* The District Court's finding on such evidence is likewise subject to free review unaffected by presumptions which ordinarily accompany their findings on controverted issues." (Emphasis supplied.) See, also, Kyeoga Land Co. v. Kentucky River Coal Corporation, 6 Cir., 1940, 110 F.2d 894.

The difficulty here is in the application of a general rule to uphold a Referee's decision based upon a proceeding which widely departed from the usual method of receiving evidence. One Referee heard a part of the evidence; another heard the balance. The testimony was as diverse as the personnel who presided at the different sessions. The conflict in the testimony, which would not even exist if the responses to the leading questions were disregarded, was obviously resolved by one Referee accepting the testimony which *he* heard, and completely rejecting the testimony heard by another Referee, thus following an opinion he had expressed and to which he had committed himself at mid-trial when he had heard only part of the evidence on the matter. The privilege of appraisal of the witnesses by watching them testify at a subsequent session was omitted by the trier of fact in this case. He heard only the first day's testimony where he allowed counsel to level and

suggest to a witness where memory was dim, vague and nonspecific. The Referee even asked leading questions himself but forbad the bankrupt's counsel to ask them of the bankrupt. He did not hear the second day's testimony where the creditor's witness recanted. It is true that the witness did so in reply to more leading questions but they were put on cross-examination after the witness had suggested that the original inquiry had overlooked salient facts.

 Whenever the giving of a false financial statement is urged as a ground for denial of a discharge in bankruptcy, to accomplish denial of discharge it must be found that credit was obtained as a proximate result of the statement. Morton v. Snider, 20 F.2d 469, 10 Am. Bankr.Rep.,N.S., 194. See, also, Bank of Monroe v. Gleeson, 8 Cir., 9 F.2d 520, which holds that it is essential to show that a creditor relied on the false statement. Remington On Bankruptcy, Vol. 7, Fifth Edition, Sec. 3338, p. 601:

> "*Seventh Element: False Statement Must Be Relied On.*
>
> "The false statement must have been relied on, and if it was not relied on in parting with the property, or in extending the credit, the discharge will not be barred. (Citing cases.)"

The extension of the credit must be *after* the giving of such a statement and in reliance on it. Such a conclusion in the case before us would only be possible by accepting answers to argumentatively leading and suggestive questions put at a time when the witness disclaimed full memory, and by rejecting the testimony of the same witness when he testified after his memory was refreshed.

██ Section 14, sub. c of the Bankruptcy Act provides that "The court shall grant the discharge unless *satisfied* that the bankrupt has * * *" done some one of the proscribed acts. (Emphasis ours.) Far from being satisfied that this requirement for denial has been met, the Court feels that it has been amply disproved. The clear pre-ponderance of evidence is to the effect that credit was extended before taking the statement. The discussed ground for denial of a discharge has been disproved and unless the other ground can be substantiated, the discharge should be granted.

It was also found by the Referee that the bankrupt " * * * has committed an offense under Section 152 of Title 18 of the United States Code * * * in that * * * while testifying in this proceeding he knowingly and fraudulently made oath that he had never stated to Ray L. Madison * * * that he, the said bankrupt, was the owner of certain life insurance endowment policies in the face amount of approximately $20,000.00, whereas in fact he had so stated * * *".

It is urged on the Court that the words spoken by the bankrupt did not meet the tests which must be applied in determining whether they amounted to a false statement. It is also contended that the statement, even if false, lacked materiality and relevancy to the matter before the Referee.

Whether these are, or are not, valid answers to the assertion of the testimony as a bar, need not be determined in this review as the record of proceedings before the Referee does not disclose that any such statement was ever made.

██ There is no certification that anyone testified to the bankrupt's having made any such statement to Ray L. Madison or anyone else. If such evidence is in the record, it has not been certified to or received by this Court, and a reading of the transcript sent here shows only that the bankrupt denied that he ever made such a statement. The inquiry as to whether he did, in what terms, and if so, to what relevancy and materiality, is a matter for the Referee to hear. When counsel for the objecting creditor indicated completion of his case on the first ground and said he would proceed to the second, the Referee asked, "Is there any need for the second one?"

The Referee then indicated that he had no doubt as to the validity of the first objection and went on to consideration of the cobankrupt's case, cutting off presentation of the second ground and leaving the considerable evidence yet to be adduced on the first ground to the ears of a different Referee who did not decide the case.

This matter is re-referred to the Referee with directions to take evidence upon the second mentioned claimed ground for denial of discharge and to determine the issues of fact and law thereon. Unless that ground for denial of a discharge be established, a discharge shall be granted to Wayne L. Leonard.