[Civ. No. 17357.  First Dist., Div. One.  Oct. 3, 1957.]

CHARLES H. KLOEHN, Respondent, v. EDWARD PRENDIVILLE et al., Appellants.

James A. Himmel for Appellants.

J. Thaddeus Cline for Respondent.

WOOD (Fred B.), J.—In this action to cancel a deed and other instruments affecting certain residential property the trial court found as follows: At all times plaintiff was the owner of the property. A confidential relation existed between plaintiff and the defendants and he reposed complete confidence in them. In 1943 he invited them to move into his home with the understanding that if they would furnish his meals and do his laundry they would have no rent, taxes, or other expenses of ownership to pay in respect to the home and that he would draw a will devising the premises to them. About September, 1943, defendants accepted this offer, moved in and continued to live there. Plaintiff faithfully kept all of his promises, and defendants furnished him his meals and laundry service. On November 20, 1945, while said confidential relation existed and while plaintiff was convalescing from an operation and was under the care of the defendants, they induced him to execute a deed conveying the property to them. He did so, subject to the condition that defendants would provide him with room and board and a home in said premises so long as he might live. They expressly agreed to said conditions and accepted the deed subject thereto. For the purpose of giving the transaction the color and appearance of a sale defendants executed a promissory note in the sum of $5,000 without interest payable to plaintiff together with a deed of trust to secure the note, which deed of trust was recorded. As a part of the transaction defendants induced plaintiff to execute an agreement under the terms of which it was provided that he would be charged $50 a month for his room and board, that said payments would be credited upon the note, but at his death any unpaid balance due under the note would be deemed fully satisfied and discharged. Plaintiff did not know or understand the nature or effect of said documents and executed the same without any independent advice and in reliance upon defendants' assurance that they would provide him a home without charge as long as he lived and, upon their assurance, that said documents were in lieu of his will and were only for the purpose of enabling defendants to get title to the premises without probate in the event of

plaintiff's death.[1] Defendants provided plaintiff with room plaintiff would have to pay defendants $50 per month for and board until January, 1954, when they informed him that the room and board which he had theretofore received constituted full payment of the note and deed of trust and the defendants were now owners of the property and thereafter his room and board if he desired to continue to live there. Plaintiff thereupon disputed defendants' title to the premises and their right to charge for room and board and promptly moved out and filed this action for equitable relief.

In addition, by finding the allegations of the complaint true, the court found that the promises defendants made as inducement for plaintiff to sign the deed and the agreement were false and untrue and were made for the purpose of deceiving plaintiff and wrongfully inducing him to sign, and that he did not, until after January 1, 1954, learn the falsity of their statements or that the deed had been recorded.

These findings are supported by the evidence. In challenging the sufficiency of the evidence defendants rely upon their own testimony, ignoring that of the plaintiff.[2]

---

[1]The court additionally found (by reference to the complaint, declaring the allegations thereof to be true) that on numerous occasions during the period of eight years preceding the filing of the complaint, defendants repeated their assurance to plaintiff that the premises would continue to be his home as long as he lived and that they would continue to provide his food and care without charge.

This finding is not supported by the evidence. Plaintiff testified that after the signing of the agreement that subject was not further discussed though he continued to live there and to receive the services indicated.

The inaccuracy of this particular finding is not a cause for reversal. It is not necessary to the judgment. (See *American Nat. Bank* v. *Donnellan*, 170 Cal. 9, 15 [148 P. 188, Ann.Cas. 1917C 744]; also 3 Witkin Cal. Procedure 2277 and cases there cited.)

[2]Plaintiff testified that after his mother's death in 1942 he was living alone. In 1943 he told his friend defendant Edward Prendiville that if the latter moved into plaintiff's home he would have no rent to pay and plaintiff would pay no board and would leave the property to the defendant when plaintiff died. The defendants moved in and plaintiff executed and delivered to them a will devising the property to them.

While he was in the hospital following an operation in 1945 Mrs. Prendiville suggested to plaintiff that if he would change the will to an agreement or a deed there would be no costs to pay after his death. He postponed consideration of this proposal until after his return from the hospital. When he had been at home for a while she again asked him if he wanted to change it over to a deed or agreement, adding "We have the papers ready." Plaintiff responded that he would "sign that over with the condition that you take care of me as long as I live." She said she would. In a couple of weeks he did sign in a lawyer's office: He had not yet returned to work. The defendants were taking care of him. They took him to the lawyer's office by automobile. He had never been there before. They went in and plaintiff was introduced to the

The findings, in turn, support the judgment, which cancelled the deed, the promissory note and the deed of trust and quieted plaintiff's title to the real property subject to a lien to secure payment of $3,534.50 found owing from plaintiff to defendants for certain expenditures they had made.

The defendants question the existence of the confidential relationship between the parties. Such an issue presents a question of fact. (*Steinberger* v. *Steinberger*, 60 Cal.App.2d 116, 122 [140 P.2d 31].) Such a relationship may arise between two persons even though they have no formal relationship such as affinity or consanguinity, or attorney and client, principal and agent, trustee and beneficiary. (*Scovill* v. *Guy*, 205 Cal. 386, 388 [270 P. 934]; *Adams* v. *Talbott*, 61 Cal.App.2d 315, 320 [142 P.2d 775]; *Bank of America* v. *Sanchez*, 3 Cal.App.2d 238, 243 [38 P.2d 787].)

Defendants have cited a number of cases in which the reviewing court affirmed, as supported by the evidence, a finding that a confidential relationship did not exist. Those cases are not authority for defendants' contention that despite the trial court's finding herein the evidence demonstrates as a matter of law that no confidential relationship existed.

It is true that the mere fact that a relationship is "friendly and intimate" does not necessarily characterize it as a "confidential" relationship (*Meyer* v. *Zuber*, 92 Cal.App. 767, 772 [268 P. 954]) but it is also true that confidential relations "may be said to exist whenever trust and confidence

lawyer who said: "The papers are ready now for you to sign." There was no discussion. Plaintiff signed them without reading them: a deed from him to the defendants and an agreement between him and the defendants. At the same time the defendants signed a promissory note and handed it to plaintiff. He also received a copy of the agreement. Both papers he put in his safe deposit box. All of this time very friendly relations existed between plaintiff and the defendants. He relied upon their statements. After the signing of these papers, defendants paid the insurance and other expenses and plaintiff received his room and board without charge. There was no exchange of money between them. At no time did defendants offer to buy the house, nor did plaintiff offer to sell. There was no mention of money because he figured he had a home there the rest of his life and continued to feel that way until January of 1954.

Those papers remained in his safe deposit box until January, 1954, when Mrs. Prendiville demanded that he pay rent, saying "The agreement is up now; you'll have to pay rent from now on." Thereupon he took the papers out of the box and submitted them to his lawyer for advice. He never read those papers until then.

There is evidence that the real property here involved was worth more than the $5,000 specified in the agreement. One witness testified it was worth $7,500 in November, 1945. Defendants' own valuation witness said it was worth $6,000 as of that date.

is reposed by one person in the integrity and fidelity of another." (*Estate of Cover*, 188 Cal. 133, 143 [204 P. 583].)

The relations between the parties here were more than friendly. The parties had established a de facto family. Plaintiff testified that he had trust and confidence in the Prendivilles, and believed and relied upon their statement that they would give him a home as long as he lived, and that that was the purport of the papers he signed. Plaintiff lived in the same house, was furnished his meals and laundry, and purchased items for the common use of the home such as a dish washer and freezer, much as a member of the family would have done. He was 63 years old at the time of the transaction in 1945, had just been hospitalized for a month, and was receiving nursing care by the Prendivilles. The direct testimony of the plaintiff, and the circumstantial evidence surrounding the transaction are sufficient to support the finding that a confidential relation existed between plaintiff and defendants.

Defendants correctly state that the mere existence of a confidential relationship and the execution of a conveyance from plaintiff to them does not raise a presumption of fraud or undue influence. But when "it also appears that the grantee exercised activity in procuring the deed, or that it was conveyed without consideration, . . . the burden is placed on the grantee to show that the deed was not obtained by fraud, or undue influence." (*Osterberg* v. *Osterberg*, 68 Cal. App.2d 254, 260 [156 P.2d 46]. See also 15 Cal.Jur.2d 428-429.) The presumption may also arise when the consideration is disproportionate. (See *O'Neill* v. *Dennis*, 109 Cal.App.2d 210, 212 [240 P.2d 376].)

In the instant case, there is evidence of activity on the part of the defendants in procuring the deed and agreement and evidence that the defendants profited unduly in the transaction. These circumstances support a presumption that the conveyance was procured through fraud and undue influence. Rescission of the agreement may be had upon such a showing. (Civ. Code, § 1689, subd. 1.)

Moreover, the facts of this case are markedly similar to those involved in *Security-First Nat. Bank* v. *Earp*, 19 Cal. 2d 774 [122 P.2d 900]. There, the defendants in an action to foreclose a trust deed, were indebted to plaintiff bank. When the mortgage fell due, defendant Washburn went to the

bank to arrange for a renewal. Defendants relied upon the representation of plaintiff's employee that they were signing an extension of the mortgage for one year, did not read the new encumbrance and were unaware that it was a trust deed containing different provisions. ■ The court stated at page 777: ''It is established in California and a majority of other jurisdictions that a person who has been induced to enter into a contract by fraudulent misrepresentations as to its contents may rescind or reform the contract. · [Citing cases.] His negligence in failing to read the contract does not bar his right to relief [citing cases] if he was justified in relying upon the representations." In the instant case, the court found that defendants had made misrepresentations as to the contents of the documents, and the confidential relation would justify the plaintiff in relying upon the representations as to their contents. Therefore he can be relieved against these provisions through the use of rescission, as in the Security-First National Bank case.

Defendants contend that plaintiff was fully and accurately advised as to the content and purport of the papers he signed and therefore could not have failed to understand their meaning and effect. In this the defendants rely upon their own testimony, which the trial court rejected, and ignore plaintiff's testimony, which the trial court believed and accepted.

Defendants challenge the sufficiency of the findings for lack of evidence that plaintiff was mentally incompetent when he executed the deed and signed the agreement. There was no need for any such evidence. ■ A person does not have to be mentally incompetent or even weak-minded to repose confidence in another when the relationship justifies it. (See *Krug* v. *Meeham,* 109 Cal.App.2d 274, 279 [240 P.2d 732].)

Again relying upon their own testimony and rejecting plaintiff's, defendants argue that there is no evidence that plaintiff did not learn of the fraud until after January 1, 1954. Plaintiff's testimony that he never read the papers until after January 1, 1954, when Mrs. Prendiville demanded that he pay rent from that time on, supports the questioned finding.

■ We perceive no reversible error in the failure of the court to make a specific finding on defendants' plea of the statute of limitations and laches. By finding the allegations of the complaint true the court found that plaintiff did not ''learn that defendants' said statements and promises were

false and untrue or that defendants had recorded said deed, as aforesaid, until after the 1st of January, 1954," and that plaintiff "promptly moved out of said premises and filed the above entitled action for equitable relief" after the demand for rent in January, 1954. The complaint was filed February 1, 1954. The only inference or conclusion that could be drawn would be against the running of the statute and against the plea of laches.

Defendants question the sufficiency of the complaint. They say that plaintiff did not allege sufficient facts "upon which this confidence existed," citing *Moen* v. *Art's Café*, 95 Cal. App.2d 577, 579 [213 P.2d 393] ; *Penaat* v. *Guasco*, 84 Cal. App.2d 445, 453 [191 P.2d 564]. In the Moen case, the plaintiff sought to impress liability on the appellants as members of a partnership. The complaint did not allege the existence of a partnership, ostensible or otherwise, between the defendants. *Penaat* v. *Guasco* discussed the sufficiency of the allegations in a complaint concerning a tax title and whether in that case it was necessary to plead and prove that the property was sold at public auction. Neither case is apposite. Defendants also cite 23 California Jurisprudence 2d 156, which states the rule that fraud must be specifically pleaded. The complaint herein does plead the facts constituting the fraud : misrepresentations concerning the nature of the documents which defendants presented for plaintiff's signature. The facts constituting the confidential relation are also specifically pleaded, the close personal relationship and plaintiff's illness. In such a situation, even though conclusionary allegations may be included in the complaint, the pleading cannot be attacked on appeal in the absence of a special demurrer. (*Campbell* v. *Genshlea*, 180 Cal. 213, 218 [180 P. 336] ; *Spreckels* v. *Gorrill*, 152 Cal. 383, 387 [92 P. 1011] ; *Collins* v. *O'Laverty*, 136 Cal. 31, 36 [68 P. 327] ; *Larkin* v. *Mullen*, 128 Cal. 449, 453 [60 P. 1091].) Defendants also argue that in "order to maintain his action it was therefore necessary for plaintiff to plead that he did not discover the facts constituting the fraud until within three years prior to the date he filed his complaint." Plaintiff did make an allegation that he did not learn of the false promises and statements until after January 1, 1954. That it was within three years was obvious. The complaint was filed February 1, 1954. Moreover, the case was tried upon the theory that the

pleadings presented the issues under discussion. No objection on that score was interposed to plaintiff's evidence.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied November 1, 1957, and appellants' petition for a hearing by the Supreme Court was denied November 26, 1957.