18 Ariz. App. 583 (1972)
504 P.2d 524
In the Matter of the GUARDIANSHIP OF the Person and Estate of Allan J. CHANDOS, An Incompetent.
Arthur L. RANES and Kathleen Rosa Ranes, husband and wife, Appellants,
v.
FIRST NATIONAL BANK OF ARIZONA, Successor Guardian of the Estate of Allan J. Chandos, an Incompetent, Appellee.
No. 2 CA-CIV 1153.
Court of Appeals of Arizona, Division 2.
December 29, 1972.
*584 Williams, Ryan & Herbolich, P.C., by Michael J. Herbolich, Douglas, for appellants.
Gentry, McNulty & Borowiec, by Robert A. Hewlett, Bisbee, for appellee.
HATHAWAY, Judge.
Arthur Ranes and his wife, Kathleen, defendants in the superior court, have appealed from an order in favor of the appellee bank requiring them to execute a quit claim deed of a parcel of property which they received by virtue of a deed of gift. The order was predicated upon the court's findings that a confidential relationship existed between the donor, Allan J. Chandos, and the defendants-donees, and that the gift was procured in violation of the confidential relationship.
Mr. Chandos, a man of advanced age, and defendants were very close friends, and as a result of such friendship, Mr. Chandos lived with the defendants. On May 4, 1970, defendants filed a petition in superior court for appointment as guardians of the person and estate of Allan J. Chandos, an alleged incompetent; four days later, Mr. Chandos executed and delivered a gift deed of a parcel of improved real property situated in California to defendants. Shortly thereafter, defendants were appointed guardians of Allan J. Chandos.
Certain irregularities arose in defendants' administration of the guardianship estate and the court, sua sponte, issued an order to defendants ordering them to appear and show cause why they should not be required to account and why a successor guardian should not be appointed. After testimony was heard, the First National Bank of Arizona, appellee herein, was appointed successor guardian of the estate and appellants were ordered to turn over all documents and assets in their possession to appellee.
After appellants filed an accounting with the court, appellee bank filed a petition for a decree against them for failure to render a true accounting, for conversion of the assets of the estate to their own use, and, in particular, praying that the court order appellants to execute a quit claim deed in favor of Allan J. Chandos of the real property reported to have been conveyed by gift deed from Chandos to appellants. The trial court gave judgment in favor of appellee decreeing that the subject gift deed be set aside as fraudulent and void, and requiring the appellants to execute a quit claim deed in favor of Allan J. Chandos.
Appellants have presented three questions for review, all three challenging the sufficiency of the evidence to sustain the trial court's findings. Consideration of the following single question we find dispositive of this appeal:
Did substantial evidence establish the existence of a confidential relationship and breach of that relationship?
In reviewing the sufficiency of the evidence, the test to be applied by an appellate court is whether or not there is any substantial evidence to support the findings. All questions of weight and credibility of testimony are for the trier of fact and cannot be set aside by the reviewing court although *585 such court would have determined the controversy in a different manner. Jackson v. Burke, 124 Cal. App.2d 519, 269 P.2d 137 (1954).
Fraud is classified under two major headings, actual and constructive. The former is distinguished by the presence of an actual intent to deceive while the latter, with which we are here concerned, is characterized by a breach of a duty arising out of a fiduciary or confidential relationship. In re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238 (1947); Bell v. Bell, 44 Ariz. 520, 39 P.2d 629 (1934). Once a confidential relationship is found to exist, there is a presumption of constructive fraud which shifts the burden of proof to defendants to show, by clear evidence, that they acted with entire fairness and that the other party acted independently, with full knowledge and of his own volition free from undue influence. Bolander v. Thompson, 57 Cal. App.2d 444, 134 P.2d 924 (1943).
Whether a confidential relationship exists between parties to a transaction is a question of fact. Kloehn v. Prendiville, 154 Cal. App.2d 156, 316 P.2d 17 (1957). A confidential relation has been defined as follows:
"A relationship which arises by reason of kinship between the parties, or professional, business, or social relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in another which largely results in the substitution of that other's will for his in the material matters involved in the transaction; or where the parties occupy relations, whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, or, in fact, reasonably exists." 15A C.J.S. Confidential, p. 352.
Appellants contend that their relationship with Mr. Chandos was nothing more than a friendly relationship and as such, not enough to constitute a fiduciary or confidential relationship; further, they contend that Mr. Chandos' confidence or implicit faith in their honesty and integrity was insufficient to establish such relationship, citing In re McDonnell's Estate, supra.
We find from the record before us that the evidence justified the court finding more than friendship, or a mere reposal of trust in another's honesty. Mrs. Ranes testified that she had been managing Mr. Chandos' estate long before the guardianship proceedings were filed. She further testified to Mr. Chandos' mental capacity as follows:
"If one describes him physically as a two-year old baby, that would be describing him a little more accurately in that he soils his clothes at least twice a day. He is 90 and  in February, 2nd. And he doesn't  he went to bed yesterday about 1:30. He came out and  he put his pajamas on and went to bed. He thought it was nighttime. And he comes out in his  dressed on top of his pajamas but he always, he gets up in the middle of the night, goes out and turns the furnace on in the stove to make his breakfast, and he will go out just any way he is dressed in the middle of the night or five o'clock in the morning, and wander around on the streets, and once we had to call the police, and twice we went and found him ourselves."
The evidence was sufficient to establish a confidential relationship and a breach thereof. Appellants were in a position to impose their will upon Mr. Chandos, and whether they did or did not was a factual question for the trial court. Pertinent sections of the record respecting the management of the estate, clearly cast suspicion upon appellants. For example, after appellants were appointed guardians they used $12,000 of the estate assets to purchase a mobile home truck in their own name. When asked about this sum of money, appellants stated that they had been unable to locate the bank account and only after extensive examination did they disclose that the money had been used to purchase *586 a mobile home truck. At the first accounting, Mrs. Ranes was found in contempt of court and incarcerated when she refused to answer questions pertaining to the real estate in question.[1] With respect to gifts or conveyances, inter vivos, the extreme age and infirmity of the grantor, together with slight evidence of circumstances from which it may be inferred that the instrument was the product of coercion will suffice to shift the burden and require the beneficiary to show affirmatively that the transaction was fair and free from undue influence. Faulkner v. Beatty, 161 Cal. App.2d 547, 327 P.2d 41 (1958).
Although a guardianship had not been established at the time of the gift deed, appellants occupied the position of de facto guardians. This type of guardianship is established when one takes possession of an infant's or incompetent's estate without right or lawful authority as the appellants did. Maish v. Valenzuela, 71 Ariz. 426, 229 P.2d 248 (1951); In re Mize's Guardianship, 193 Okl. 164, 142 P.2d 116 (1943); Zeideman v. Molasky, 118 Mo. App. 106, 94 S.W. 754 (1906). A de facto guardian is subject to all the responsibilities that attach to a legally appointed guardian or trustee. Zeideman v. Molasky, supra; Smith v. Cameron, 158 Mich. 174, 122 N.W. 564 (1909). Since a guardian cannot profit from his ward's estate the lower court properly ordered appellants to quit claim the property to Chandos. Giovani v. Rescorla, 69 Ariz. 20, 207 P.2d 1124 (1949); Shackelford v. Swantek, 62 Ariz. 86, 153 P.2d 534 (1944).
Judgment affirmed.
KRUCKER, C.J., and HOWARD, J., concur.
NOTES
[1] Evidence further disclosed the following:

The Ranes, in their final accounting of the estate, filed a claim for a television set allegedly purchased for Mr. Chandos, a television set Mr. Chandos never had in his possession; during the time that Mr. Chandos was under the guardianship of the Ranes, the Ranes instituted a quiet title action against their ward on the parcel which was gift deeded to appellants; dividend payments which were due on Mr. Chandos' stock remained unaccounted for during the guardianship; the Ranes also kept the balance of the $12,000 which they had used for the purchase of the mobile home truck.