815 P.2d 35

In the Matter of the ESTATE OF Manford R. LOGAN, Incapacitated Person who is now Deceased.

Ashsha EAST, Conservator, Appellant–Appellant on Appeal,

v.

WEST ONE BANK, IDAHO, N.A., Personal Representative of the Estate of Manford R. Logan; Bertha Bennett, Dorothy Badam, Mary Lou Davis, Lorene Thomas, Devisees of the Estate of Manford R. Logan, Respondents–Respondents on Appeal.

No. 18518.

Court of Appeals of Idaho.

June 17, 1991.

Rehearing Denied Aug. 16, 1991.

Ashsha East, pro se.

Hamilton, Clark, Michaelson & Drescher, Nampa, for respondent devisees. Terry M. Michaelson, appeared, but did not take part in oral argument.

SILAK, Judge.

Ashsha East, the guardian and conservator of her father's estate during his lifetime, appeals from a decision of the district court which affirmed the magistrate's judgment entered in favor of the personal representative of her father's estate. For the reasons explained below, we affirm.

East is the only child of Manford R. Logan, who lived in Homedale and later Nampa, Idaho. Logan suffered a stroke in 1978, but was able to continue living in his own home with the assistance of live-in care-givers. After suffering a second stroke in May of 1985, he was diagnosed with aplastic anemia. He was hospitalized for approximately one week, then transferred to a nursing home for the next six months. East took her father to live with her in Colorado in December of 1985, and he remained there until his death on April 26, 1987.

On May 17, 1985, East petitioned for appointment as guardian and conservator of her father's estate. On the same day, she filed documents denominated "acceptances" of appointment as guardian and as conservator. On July 17, 1985, she was appointed conservator of her father's estate, to act without bond, and on August 12, 1985, she was appointed guardian. After her father's death, West One Bank (the bank) was appointed personal representative of the estate.

After requests from the bank, East filed a final account and petition for approval of account and termination of guardianship and conservatorship on March 29, 1988. On September 7, 1988, she filed an amended final account, to which other devisees and the bank objected. After a hearing on the bank's objections, the magistrate entered a partial judgment in favor of the bank, as personal representative of Logan's estate, in the amount of $38,814.58. The magistrate certified the partial judgment as a final judgment, pursuant to

I.R.C.P. 54(b), for purposes of execution and appeal.

On appeal to the district court, the partial judgment was affirmed. East now appeals to this Court, arguing that the magistrate lacked jurisdiction over her, that the magistrate erred in determining the date from which she would be required to account for expenditures in the conservatorship, that the magistrate erred by requiring corroboration of her testimony regarding the nature of certain items in her final account, and that the magistrate's findings were not supported by substantial evidence.

### Jurisdiction

■ East's argument that the magistrate lacked jurisdiction over her was not raised to the magistrate or to the district court sitting in its appellate capacity. Although appellate courts ordinarily will not consider issues raised for the first time on appeal, the jurisdictional issue is an exception to that general rule. *Hoppe v. McDonald*, 103 Idaho 33, 35, 644 P.2d 355, 357 (1982); *In re Estate of Kunzler*, 109 Idaho 350, 353, 707 P.2d 461, 464 (Ct.App.1985). East's argument, however, has no merit. By accepting the appointment as conservator of her father's estate, East submitted personally to the jurisdiction of the court in any proceeding relating to the estate that might have been instituted by any interested person. I.C. § 15-5-413. The magistrate also had personal jurisdiction over East by virtue of her acceptance of the appointment as guardian. I.C. § 15-5-208. In addition, East stated in the "acceptance" filed with her petition that she "hereby submits personally to the jurisdiction of this Court in any proceeding relating to the estate that may be instituted by any interested person, as defined by the Idaho Uniform Probate Code."

■ The remaining issues before this Court are the same as those considered by the district court sitting in its appellate capacity. In such cases, we review the record with due regard for, but independently from, the district court's decision. *Robinson v. Joint School District No. 331,* 105 Idaho 487, 490, 670 P.2d 894, 897 (1983); *Hentges v. Hentges*, 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

### Commencement of Conservatorship

■ East argues that the magistrate erred in concluding that she was responsible for accounting from May 17, 1985, the date she petitioned for appointment as conservator of her father's estate, rather than from July 17, 1985, the date of her appointment. In particular, she argues that the magistrate erred by requiring her to account for a deposit of her father's social security income on June 8, 1985, in the amount of $401. The magistrate's conclusion involves a question of law. While this Court will defer to findings of fact based on substantial evidence, we freely review statements of law and the lower court's application of the law to the facts found. *Staggie v. Idaho Falls Consolidated Hospitals*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986). The question, thus, is whether a conservator can be required to account for conservatorship funds that came into her hands or that were spent by her prior to her appointment as conservator.

■ Generally, a *de facto* guardianship is established when one takes possession of an infant's or incompetent's estate without right or lawful authority. *Maish v. Valenzuela,* 71 Ariz. 426, 229 P.2d 248, 250 (1951); *In re Guardianship of Chandos*, 18 Ariz.App. 583, 504 P.2d 524, 527 (1972); *In re Mize's Guardianship*, 193 Okl. 164, 142 P.2d 116, 118 (1943). *See generally*, 39 C.J.S. *Guardian and Ward*, §§ 5, 69 (1976). A *de facto* guardian is subject to all the responsibilities that attach to a legally appointed guardian. *Maish*, 229 P.2d at 250; *Chandos*, 504 P.2d at 527; *Mize*, 142 P.2d at 119. A court may hold the *de facto* guardian responsible for transactions occurring during such a guardianship. *Maish*, 229 P.2d at 250; *Chandos*, 504 P.2d at 527; *Mize*, 142 P.2d at 119; *In re Guardianship of Adamec*, 100 Wash.2d 166, 667 P.2d 1085, 1091

(1983); *In re Guardianship of Rudonick,* 76 Wash.2d 117, 456 P.2d 96, 99 (1969).[1]

The magistrate found that East had been exercising control over her father's finances at least since the end of January, 1985. The last check signed by Logan was dated January 31, 1985; after that date, all the checks drawn on her father's account were signed by East. Sometime in January, new checks were issued for her father's checking account in Homedale. The new checks were imprinted with East's name and her father's name, and all of the new checks were signed by East beginning with check number 101 dated January 15, 1985.

Because East's accountability for transactions prior to May 17, 1985, had not been litigated, the magistrate did not hold her accountable for those transactions. The magistrate did look to the "acceptance" filed by East with her petition for appointment of conservator on May 17, 1985, in which she stated:

> [ASHSHA] EAST being first duly sworn upon oath, deposes and says:
>
> The undersigned hereby accepts appointment to, and agrees to perform the duties and discharge the trust of, the office of conservator of the estate of MANFORD R. LOGAN. . . .

On the facts of this case, we hold that the magistrate did not err in concluding that East was responsible for accounting from the date she petitioned for appointment as conservator of her father's estate because she became her father's *de facto* conservator at least as of the date she filed her "acceptance," if not sooner.

*Corroboration*

East argues that the magistrate erred by requiring her to prove by written document, as opposed to oral testimony, that each and every item in her final account was spent for her father's benefit and not for her own private benefit. She specifically argues that the magistrate erred by finding that the deposit of $170 on December 9, 1985, was not a loan to the estate from the conservator and that the deposit of $606.44 on June 5, 1985, was farm income.

We note that the magistrate did not require East to provide written corroboration of each and every expense item in her final inventory. In a lengthy and very thorough memorandum decision, the magistrate disallowed certain of East's claims because he found her testimony to be incredible and because she presented no other credible evidence to support those claims. In other words, the magistrate found that East failed to carry her burden of proof on those claims. In particular, the magistrate found that East failed to carry her burden of proving that the $170 actually was a loan made by her to the estate and that, absent any other explanation by East as to the source of the funds, the deposit of $606.44 on June 5, 1985, was farm income.

Because the evidence necessary to establish the accuracy of her final account lay peculiarly within the knowledge and competence of East, she had the burden of proving the necessity, reasonableness, and amount of expenses, as well as the amount and type of income. *See Pace v. Hymas,* 111 Idaho 581, 585, 726 P.2d 693, 697 (1986); *Luke v. Kettenbach,* 32 Idaho 191, 200, 181 P. 705, 707 (1919); 39 C.J.S., *Guardian and Ward* § 155.[2] A determi-

---

1. A guardian of an incapacitated person must make provision for the ward's care, comfort, and maintenance. I.C. § 15–5–312(a)(2). If no conservator has been appointed, the guardian may receive money and property deliverable to the ward and apply them to the ward's care, but the guardian must exercise care to conserve any excess for the ward's needs. I.C. § 15–5–312(a)(4)(B). A conservator acts as a fiduciary and must observe the standards of care applicable to trustees. I.C. § 15–5–417. In the instant case, East occupied both these roles.

2. *Accord Myers v. Sill,* 497 P.2d 920, 922 (Alaska 1972); *In re Guardianship of Cookingham,* 45 Cal.2d 367, 289 P.2d 16, 20 (1955); *In re Conservatorship of Sheard,* 60 Or.App. 65, 652 P.2d 849, 851 (1982); *Salisbury v. Hanover Insurance Company,* 443 P.2d 135, 137 (Wyo.1968). *See also In re Estate of Spencer,* 106 Idaho 316, 320, 678 P.2d 108, 112 (Ct.App.1984) (in litigating an account in a decedent's estate, the personal representative occupies the same status as a plaintiff in an ordinary civil action and the objector occupies the same position as a defendant).

nation that a party failed to meet its burden of proof will be upheld on appeal unless it was clearly erroneous. *See Viehweg v. Thompson,* 103 Idaho 265, 272–73, 647 P.2d 311, 318–19 (Ct.App.1982).

While a conservator may expend funds reasonably necessary for the support, education, care, and benefit of the protected person, I.C. § 15–5–425(a)(1), the conservator must keep suitable records of the administration of the estate and exhibit those records at the request of any interested person. I.C. § 15–5–418. A conservator must act as a fiduciary and observe the standards of care applicable to trustees. I.C. § 15–5–417.

East made no attempt to keep accurate records of income received and expenses paid for the benefit of her father during her twenty-two months as conservator of the estate. She did not file an inventory of the estate within ninety days of her appointment as required by I.C. § 15–5–418; the inventory was filed on December 31, 1987—eight months after her father's death. She did not file income tax returns for the estate until requested to do so by the bank after her father's death. The information in her final accounting came from ledgers prepared by her attorney's staff after her father's death; the staff attempted to reconstruct the financial records from boxes of cash receipts, cancelled checks, deposit slips, and bank statements. In addition, East commingled her own funds with her father's funds in his Idaho checking account and in her Colorado checking account. She paid both her personal expenses and conservatorship expenses by checks drawn on each of these accounts and also paid some of her personal expenses and some conservatorship expenses in cash.

■ The magistrate had a duty to inquire fully and to examine each and every item or claim for credit in East's final account. *In re Wilson's Guardianship,* 68 Idaho 486, 490, 199 P.2d 261, 263 (1948) (*citing Short v. Thompson,* 56 Idaho 361, 55 P.2d 163 (1936)). The magistrate also had a duty to reject any illegal item or claim, as well as any item or claim which

was unjust in fact. *Id.* Further, the magistrate had a duty to inquire into the question of income to the estate and to charge East with any income the estate would have received if East had exercised the degree of care and attention required of her. *Id.*

Weighing the evidence, determining the inferences to be drawn from the evidence, and assessing the credibility of witnesses are the province of the trial court. *Angleton v. Angleton,* 84 Idaho 184, 198, 370 P.2d 788, 796 (1962); *Tucek v. Huff,* 115 Idaho 905, 906, 771 P.2d 923, 924 (Ct.App. 1989); I.R.C.P. 52(a). Because she had not kept adequate records during the conservatorship, East's attempt to construct the records three years after her appointment was an overwhelming task. She testified that she was confused about, and really did not remember, the exact nature of many income and expense items. She testified that she did not understand how the estate tax returns were prepared or why various figures on the tax returns varied from the corresponding figures on her accounting. Her testimony was internally inconsistent and contradictory. We find no error in the magistrate's determination that East's testimony was incredible or the conclusion that she failed to carry her burden of proof. East failed to exercise the degree of care and attention required of her, and the magistrate did not err by finding that these two items were income of the estate.

### Findings of Fact

■ East argues that there was insufficient evidence to support the magistrate's finding as to the amount of net farm income for the years 1985, 1986, and 1987, the finding that had the farm been sold, the interest income on the sale proceeds would have been more than the $5,000 net income the farm was generating, and the finding that the deposit of $1,225.55 on October 25, 1985, was farm income rather than a loan from the conservator.

The role of this Court in reviewing findings of fact is limited. We do not weigh the evidence, nor do we substitute our view of the facts for the view of the trial judge.

*Ortiz v. Department of Health & Welfare,* 113 Idaho 682, 683, 747 P.2d 91, 92 (Ct.App. 1987). Findings cannot be deemed clearly erroneous if they are supported by substantial, even though conflicting, evidence in the record. *Ortiz* at 683–84, 747 P.2d at 92–3; *Rasmussen v. Martin,* 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). Evidence is substantial if a reasonable trier of fact would accept and rely upon it in determining whether a disputed point of fact has been proven. *Ortiz,* 113 Idaho at 684, 747 P.2d at 93. This standard of review reflects the view that deference must be accorded to the trial court's special opportunity to assess and weigh the credibility of the witnesses who appear before it. *State v. Tierney,* 109 Idaho 474, 476, 708 P.2d 879, 881 (1985); *Ortiz,* 113 Idaho at 684, 747 P.2d at 93; I.R.C.P. 52(a). In addition, the party challenging the findings has the burden of showing error, and this Court will review the evidence in the light most favorable to the prevailing party. *Martsch v. Nelson,* 109 Idaho 95, 100, 705 P.2d 1050, 1055 (Ct.App.1985).

 In addition to his home, from which there was rental income after he went to live with East in Colorado, Logan owned two pieces of real property which generated income: a farm leased to a tenant farmer and a building leased to Idaho Power Company. In his will, Logan had devised the building to his sister and had devised the farm to East and her sons. When funds in the conservatorship estate began to run low, East, who was aware of the terms of Logan's will, sold the building to Idaho Power Company. In discussing East's decision to sell the building to Idaho Power rather than selling the farm, the magistrate stated that if she had sold the farm for only one-half the value she placed on it, the interest income on the sale proceeds would have been more than the $5,000 net annual income the farm was generating. The magistrate found that, even though her decision was influenced by self-interest, and even though the lack of funds was caused by her breach of her fiduciary duty, the other devisees had failed to show any right to recover any damages from East. Because there was no

prejudice to East which would warrant reversal, any error that the magistrate may have committed was harmless. *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 606, 726 P.2d 706, 718 (1986); I.R.C.P. 61.

The magistrate found that the deposit of $1,225.55 on October 25, 1985, was farm income rather than·a loan from the conservator. Given that East admitted the deposit could have represented farm income, and absent any evidence to corroborate East's claim that the deposit was a loan to the conservatorship from her personal funds, we hold that there was substantial evidence to support the magistrate's finding.

East argues that the magistrate erred in computing the amount of farm income for the years 1985, 1986, and 1987. Other than the items already discussed in this opinion, East has made no specific allegations of error as to the 1985 farm income. East's farm income records for 1985 were incomplete and contradictory. The magistrate determined the amount of farm income from several exhibits submitted by East and admitted at the hearing: the 1985 income tax return for the estate; bank statements covering the last half of 1985 from Logan's Idaho checking account; and deposit slips and checks from Logan's Idaho checking account. After a thorough review of the record on appeal, we conclude that the magistrate's finding as to the amount of 1985 farm income was supported by substantial evidence.

 Although East raises as an issue on appeal that the magistrate erred in computing the amount of the 1986 and 1987 farm income, she has pointed to no specific error in the magistrate's computations and has not supported this alleged error with any argument or authority in her brief. The failure to support an alleged error with argument and authority is deemed a waiver of the issue. *State v. Burris,* 101 Idaho 683, 684 n. 1, 619 P.2d 1136, 1137 n. 1 (1980); I.A.R. 35(a)(6).

The decision of the district court upholding the judgment of the magistrate in favor of the bank as personal representative of

Manford R. Logan's estate is affirmed. No attorney fees allowed on appeal; costs to respondent, West One Bank.

WALTERS, C.J., and SWANSTROM, J., concur.