JOHN DUNCAN, Respondent, v. CHARLES A. STONEHAM et al., Individually and as Copartners under the Firm Name of CHARLES A. STONEHAM & Co., Appellants, Impleaded with Another.

(Argued December 2, 1929; decided February 18, 1930.)

*Frank H. Hiscock, I. Maurice Wormser* and *Leo J. Bondy* for appellants. No cause of action was established and the complaint should have been dismissed for failure of proof at the close of plaintiff's evidence. (*Wisner* v. *Jewett*, 243 N. Y. 562; *Lamphere* v. *Lang*, 213 N. Y. 585; *Ganwell* v. *Bigley,* 149 N. E. Rep. 155; *Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220; *Beer* v. *Clyde Steamship Co.*, 212 App. Div. 463; *Northam* v. *Dutchess County Mut. Ins. Co.*, 177 N. Y. 73.)

*Caruthers Ewing, Clinton De Witt Van Siclen* and *Wellington S. Crouse* for respondent. The letter contains fraudulent misrepresentations, and every essential element that has to do with an action of fraud and deceit. (*Reno* v. *Bull*, 226 N. Y. 546; *Ochs* v. *Woods*, 221 N. Y. 335; *Downey* v. *Finucane*, 205 N. Y. 251; *Haddock* v. *Osmer*, 153 N. Y. 604; *Kountz* v. *Kennedy*, 147 N. Y. 124; *Rothschild* v. *Mack*, 115 N. Y. 1; *Brickett* v. *Griswold*, 112 N. Y. 454; *Beardsley* v. *Duntley*, 69 N. Y. 577; *Bradley* v. *Seaboard National Bank*, 167 N. Y. 427; *Levy* v.

*Abramsohn,* 81 N. Y. Supp. 344; *Goldsmith* v. *Stern,* 84 N. Y. Supp. 869; *Wiser* v. *Lawlor,* 189 U. S. 260; *Bridger* v. *Goldsmith,* 143 N. Y. 424; *Reefs* v. *Twiss,* L. R. [1896] App. Cas. 272; *Gray* v. *Richmond Bicycle Co.,* 167 N. Y. 348; *Zabriskie* v. *Smith,* 13 N. Y. 322.)

*Per Curiam.* In their letter to the plaintiff, requesting that he consent to a transfer of their stock brokerage business to E. H. Clarke & Co., the appellants said: " In this connection we have investigated Messrs. E. H. Clarke & Co., and believe them to be financially responsible and fully capable of carrying out any obligations they assume in the taking over of this business." Clearly, this was not the utterance of a mere opinion or prophesy. The appellants asserted that they had " investigated " E. H. Clarke & Co., and " believed them to be financi lly responsible " and " fully capable of carrying out any obligations they assume in the taking over of this business." We interpret the representation to mean that the appellants had conducted a thorough investigation concerning the financial standing of Clarke, who did a brokerage business under the name of E. H. Clarke & Co.; that, as a result thereof, they entertained an honest belief in his responsibility and capability as represented. The representation was not merely that Clarke was capable of carrying out the appellants' obligation to the plaintiff, which Clarke assumed on the transfer; it was an expression of a belief, based upon careful investigation, that Clarke was capable of performing " any obligation " which he might assume in the taking over " of this business." The representation related to performance of obligations assumed toward customers of the appellants other than the plaintiff, as well as to him. It likewise related to the obligations assumed toward the appellants in taking over the business. On the transfer Clarke assumed toward the appellants an obligation to pay the aggregate of the debts of all their customers, or a sum in excess of $280,000. The appellants exacted of Clarke

no statement of assets and liabilities; made no inquiry as to his financial rating; inquired of no bank concerning his financial responsibility. The witness Robertson, one of the appellant firm, had a friend named Willis, a fellow-member of a country club, by whom he had been assured that Clarke was in splendid financial condition. Robertson stated that he made inquiries of other brokers, but was unable to give their names, except the name of the brokerage house of Deery & Co. That firm had taken over some of the offices of the appellant firm on the same basis as had Clarke. The firm subsequently became a bankrupt, as did Clarke. In point of fact Clarke conducted a small arbitrage business; was a member of no stock exchange; maintained an office, consisting of a few rooms of small size; employed no salesmen; ran his office with three or four girls, a telegraph operator and a couple of boys; kept a daily bank balance of less than $1,000. We think the appellants made an insufficient investigation, and were possessed of inadequate information, to assert a belief, based upon careful inquiry made, that Clarke was financially able to carry out all obligations assumed upon the transfer, especially to make a present payment of more than $280,000 to the appellants. It is said that the plaintiff had no right to rely upon the misrepresentations made except to conclude with Clarke the stock transactions begun with the appellants; that the result intended to be induced by the misrepresentation was merely the transfer of his present business with the appellants to the brokerage house of E. H. Clarke & Co.; that, in re-employing Clarke to carry out further transactions, from which a loss resulted, the plaintiff could not properly complain of an inducement to that end by the appellants. The appellants placed no limitation upon the use of their representation which would so restrict the plaintiff that he might rely upon it merely to bring to a conclusion stock transactions previously initiated. Clarke, they said, was fully capable of fulfilling " any obligations " he might assume " in the taking over

of this business." In taking over the business Clarke would enter into the relationship of broker and customer with each of the appellants' customers. The obligations he would then assume would relate to new transactions in stocks as well as the conclusion of old transactions. When the appellants said that he was fully capable of carrying out all obligations assumed we think they had reference to engagements of the future as well as of the past. This view is substantiated by other statements contained in the letter. The appellants stated to the plaintiff that in negotiating for the transfer of their offices, they had insisted that the firm selected should be sufficiently equipped and long enough established " to render you the kind of service to which you are accustomed." Clearly, the appellants intended to recommend Clarke as a broker, not merely for the conclusion of old business, but as a suitable person to act for the plaintiff in transactions newly undertaken. We think that the plaintiff was entitled to rely upon the representation when it resumed business with Clarke after the original transaction had been concluded. For these views we find authority in *Zabriskie* v. *Smith* (13 N. Y. 322) and *Bradley* v. *Seaboard Nat. Bank* (167 N. Y. 427). It is said that error was made in receiving Exhibit 55 in evidence. For the reasons given in *Harford* v. *Stoneham* (253 N. Y. 188), decided herewith, approving the admission in that action of the same document under a different exhibit number, a majority of the court are of the opinion that the exhibit was properly received. We have examined numerous other assignments of error and have concluded that the record is free of any error which might seriously have prejudiced the rights of the appellants.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., CRANE, O'BRIEN and HUBBS, JJ., concur; POUND, LEHMAN and KELLOGG, JJ., dissent on the ground of error in the admission of Exhibit 55.

Judgment affirmed.