528 P.2d 188

HERZ & LEWIS, INC., a corporation, Appellant,

v.

UNION BANK, a corporation; Jack R. Winn, Appellees.

No. 2 CA–CIV 1624.

Court of Appeals of Arizona, Division 2.

Nov. 21, 1974.

Rehearing Denied Dec. 27, 1974.

Review Denied Jan. 28, 1975.

Louis L. Deckter, P. C. by Michael F. Beers and Louis L. Deckter, Tucson, for appellant.

Robertson, Molloy, Fickett & Jones, P. C. by John F. Molloy and Michael J. Meehan, Tucson, for appellee Union Bank.

Hillock & Richards by Malcolm L. Hillock, Tucson, for appellee Winn.

## OPINION

HOWARD, Judge.

Appellant claims that the court below erred when it granted summary judgment in favor of appellees. The issue to be resolved is whether appellant had the right to rely on appellees' representation more than two years after it was made.

Since this case has been disposed of by way of summary judgment in favor of appellees, we review the facts in a light most favorable to appellant. Hackin v. First Nat. Bank, 101 Ariz. 350, 419 P.2d 529 (1966). Appellant is a wholesale jeweler based in Los Angeles, California. In the course of its business, it had dealings with several retail jewelers in the Tucson area, including N. Pfeffer's, Inc. As of late 1965, appellant was extending credit of approximately $10,000 to Pfeffer. On January 28, 1966, at appellant's request, the Bank of America wrote to appellee bank to determine the credit standing of N. Pfeffer's Inc. Pfeffer had given appellee bank's name as a reference in its request for trade credit in the amount of $50,000

from appellant. Appellee Winn replied that Pfeffer could be dealt with "in complete confidence" and that appellee was "extending credit to this corporation in a high six figure amount on an unsecured basis." The latter statement was false. Appellee bank had only extended credit to Pfeffer in a high five figure amount.[1]

Appellant doubted the accuracy of appellees' statement regarding the amount of credit extended and directed the Bank of America to request appellees to recheck their records. This the Bank of America did. On March 8, 1966, appellee Winn replied that he had rechecked the records and was quite familiar with the Pfeffer account. He also assured the Bank of America that Pfeffer qualified "for a line of credit in this proportion" and that the credit was based upon Pfeffer's personal guarantee, but that appellee bank was "in the process of transferring his entire line to a receivable line."[2] This information was relayed by the Bank of America to appellant, and appellant began extending credit to Pfeffer. Throughout 1966, 1967, and 1968, appellant had no problem with Pfeffer's credit. On March 29, 1969, Pfeffer died. Shortly thereafter his corporation went into bankruptcy and credit extended by appellant dating back to October 9, 1968, remained unpaid. The total debt owed was $123,338.65. The cause of Pfeffer's bankruptcy was disputed, but because of the analysis we take, it is unnecessary to detail the dispute.

On March 29, 1971, appellant filed its complaint alleging that appellees' credit recommendation was either a willful, wanton, or negligent misrepresentation and that as a proximate result thereof it was damaged. On December 6, 1973, summary judgment in appellees' favor was granted.

Appellees do not deny that there was a misrepresentation. However, even if the misrepresentation was willful, wanton, or negligent, appellant must still prove justifiable reliance, or the existence of a confidential relationship,[3] before it may recover.

Appellant claims that the evidence showing appellee acted as a collection agent on certain notes owed by Pfeffer to appellant is evidence of a confidential relationship. We do not agree. Although the relationship between appellant and appellee bank relative to these notes was that of principal and agent, this agency did not extend to all relationships between the parties. But see, Union Bank v. Safanie, 5 Ariz.App. 342, 427 P.2d 146 (1967). In the case of In Re Guardianship of Chandos, 18 Ariz.App. 583, 504 P.2d 524 (1972), this Court defined a confidential relation as:

> " 'A relationship which arises by reason of kinship between the parties, or professional, business, or social relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in another which largely results in the substitution of that other's will for his in the material matters involved in the transaction . . . .' " 18 Ariz.App. at 585, 504 P.2d at 526.

Whether a confidential relationship exists is usually a question of fact. In Re Guardianship of Chandos, supra. The undisputed facts in this case, however, do not disclose the existence of a confidential relationship. At least three factors merge in this case to make it unreasonable as a matter of law for appellant to have acted as it did. First, in the modern commercial

---

1. In the banking trade a high five figure amount means an amount up to approximately $90,000, while a high six figure amount refers to an amount up to approximately $900,000.

2. The deposition of appellee Winn indicates that the transfer of credit to a "receivable line" was not solely a sign of the debtor's financial weakness and would not necessarily have alerted other to a growing financial instability.

3. Hassenpflug v. Jones, 84 Ariz. 33, 323 P.2d 296 (1958); Ornamental & Structural Steel, Inc. v. BBG, Inc., 20 Ariz.App. 16, 509 P.2d 1053 (1973).

world under normal circumstances, it is at best questionable whether it is reasonable to rely on financial information given more than two years earlier. Second, while appellant did have business relations with appellee bank, the contacts were minimal. Third, the misrepresented information upon which appellant relied was that appellee bank was *"presently* extending credit to this corporation in a high six figure amount on an unsecured basis." (Emphasis added) Since, there was no confidential relationship shown, it was incumbent upon appellant to present some evidence that it had a right to rely on the misrepesentation.

Appellees claim there are four reasons why it was unreasonable for appellant to rely upon the false information: First, there was a two and one-half year interval between the representation and the injurious event; second, the statement that Pfeffer's credit was being transferred to a receivable line should have put appellant on notice that it should get further information; third, appellant should have obtain additional financial information; and fourth, there was neither privity of contract nor privity of contact between appellant and appellees. At this stage of the case, we believe only the first argument has merit. In the fast-paced reality of economic life, it was unreasonable, as a matter of law, for appellant to rely on appellees' statement for more than a two and one-half year period.

▮ We believe it is helpful to first realize that it is entirely possible for a party to rely on information upon which it had no right to rely. See, Mutual Benefit Health & Accident Ass'n v. Ferrell, 42 Ariz. 477, 27 P.2d 519 (1933). Also, where, as here, the relevant facts are undisputed, the court may, as a matter of law, decide whether there was a right to rely. School District No. 69 v. Altherr, 10 Ariz. App. 333, 458 P.2d 537 (1969).

▮ As appellant recognizes, "the real issue in this case is how far into the future can the information be relied upon?" We conceive the final determination of reasonableness to be the product of four variables. First, it is necessary to consider the general capacity for rapid economic change. With the increased complexity of our economic structure, that capacity is greater now than it was one hundred years ago. Second, the specific transaction involved must be analyzed; a real estate transaction may allow a greater delay in reliance than the normal mercantile exchange. Cf., J. M. Radford Grocery Co. v. Halper, 274 S.W. 1023 (Tex.Civ.App.1925). Third, the specific representation should be studied. See, Hills Sav. Bank v. Cress, 205 Iowa 306, 218 N.W. 74 (1928); Atlas Shoe Co. v. Bechard, 102 Me. 197, 66 A. 390 (1906). For example, was the representation explicitly made continuing? Finally, the length of the delay should be scrutinized.

Recognizing that we live in a rapidly changing economy, that undisputed evidence showed appellant usually sold "on the basis of 30 to 60 days open accounts, beyond that . . . [taking] notes of two to three months", that the misrepresentation was that appellee bank was presently extending six figure credit to Pfeffer and that appellant's loss was incurred after reliance was extended more than two and one-half years, we believe that as a matter of law it was unreasonable for appellant to rely, and thus had no right to rely. See, Monier v. Guaranty Trust Co., 82 F.2d 252 (2d Cir. 1936), cert. denied 298 U.S. 670, 56 S.Ct. 835, 80 L.Ed. 1393 (1936). Appellant refers us to four cases to support its position. Brown v. Lobdell, Farwell & Co., 51 Ill.App. 574 (1894); Duncan v. Stoneham, 253 N.Y. 183, 170 N.E. 571 (1930); Von Bruck v. Peyser, 25 N.Y.Super. (2 Robt.) 468 (1864) later appeal 27 N.Y.Super. (4 Robt.) 514 (1867); Lowdon v. Fisk, 27 S.W. 180 (Tex.Civ.App.1894). We find none convincing. In *Lowdon,* the issue appears to have been actual reliance rather than the right to rely as the court stated that the length of time elapsed since

the representation is for the trier of fact to consider "in passing upon the question as to the extent that the sale was actually influenced thereby." Id. at 182. In *Von Bruck,* Judge Monell appears also to have failed to distinguish between reliance and the right to rely. He states:

"I am, therefore, of opinion that the question, whether the plaintiffs were influenced in the sales made in the summer of 1860, by representations made in 1858, should have gone to the jury." 25 N.Y.Super. (2 Robt.) at 478.

We believe the concurrence of Chief Judge Robertson is better reasoned. He explains:

"In this case, the representation was made in March, 1858, and the credit given in July, 1860, being two years and four months afterwards. Had nothing else intervened, it would be difficult to say that the former was admissible in evidence as the intended cause of the latter. Without inquiry, or further information, the plaintiffs, as persons of ordinary prudence, could not be presumed to have believed that the circumstances of a party would necessarily remain the same all that time." Id. at 481–82.

In *Duncan* the court stressed the particular language used in the representation as evidence of an intent that it should be continuing, and in *Brown,* the delay in reliance was only three months.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.