Harry **BECHTEL** and Cathleen Bechtel, husband and wife, Appellees,

v.

**LIBERTY NATIONAL BANK,** a National Banking Association et al., Appellants.

No. 74–2236.

United States Court of Appeals, Ninth Circuit.

April 12, 1976.

John P. Frank (argued), of Lewis & Roca, Phoenix, Ariz., for appellants.

Robert J. Welliever (argued), of Welliever, Smith & McVay, Phoenix, Ariz., for appellees.

OPINION

Before BARNES, ELY, and WALLACE, Circuit Judges.

ELY, Circuit Judge:

In March, 1971, appellee (Bechtel),[1] the buyer of a 6,460-acre farm in Cochise County, Arizona, instituted this suit for fraud in the Arizona Superior Court for Maricopa County against Liberty National Bank (now Lovington National Bank), a New Mexico

---

1. We refer to Bechtel in the singular, although his wife was also joined as a party plaintiff.

corporation, Roy Jones, *et ux.*,[2] and Winford Carlile, *et ux.*[3] Bechtel claimed that those defendants, appellants here, had made material and false representations concerning the production capacity and lift of three irrigation water wells on the property.[4] The bank, which had acquired ownership of the farm in early 1967 by means of a "deed in lieu of foreclosure" executed by the former owner, had entered into a contract of sale in November, 1967, with Bechtel and two partners, Donald Davidson and George Wake, in which the buyers agreed to a purchase price of $245,000, including a down payment of $25,000.

In the fall of 1968, after a crop failure attributed to lack of sufficient water, Bechtel took over all the obligations and assets of the farm from his two partners. Lacking funds to plant a 1969 crop, he leased the farm to one Bookwalter for three years at $35,000 per year. At the same time, one year after Bechtel and his partners had bought the property for $245,000, Bechtel and Bookwalter executed a contract under which Bookwalter acquired an option to purchase the property for $395,000. However, Bookwalter's crops failed, this failure also attributed to an inadequate supply of water, and in late 1969, Bookwalter abandoned the farm. Thereafter, Bechtel obtained a $45,000 personal loan from Lovington National Bank, secured by the Bookwalter lease, in order to meet his, Bechtel's, 1970 payments on the land and some of his

other expenses.[5] He subsequently turned over to the bank $20,000 that he had obtained in compromise of a claim based upon Bookwalter's alleged breach of his lease agreement.

When Bechtel's payments on the farm became due in early 1971, he was unable to meet them, whereupon the bank instituted forfeiture proceedings against him in Arizona, obtained an order from the Arizona Superior Court for Cochise County appointing a receiver for the land, and also secured a judgment against Bechtel for the amount of the debt evidenced by the personal note. On March 4, 1971, before completion of the forfeiture was recorded in Cochise County on May 14, 1971, appellee filed his suit in the state court. On March 16, 1971, appellants removed the action to the District Court for the District of Arizona, pursuant to 28 U.S.C. § 1441. Then, on April 29, 1971, they moved to dismiss the action for the claimed failure of the complaint to state a claim upon which relief could be granted and for failure to join Donald Davidson and George Wake as indispensable parties. On July 8, 1971, prior to a hearing on this motion, the bank filed an amended motion to dismiss, adding as a ground for dismissal that under 12 U.S.C. § 94, there was lack of venue. At a hearing conducted on November 22, 1971, the District Court denied the motion, holding that the bank had waived its claim in respect to venue. The case proceeded to trial in March, 1974. The jury

---

2. At trial, the District Court granted Bechtel's motion, upon stipulation of counsel, to dismiss Bechtel's claim against Roy L. Jones, a trustee of Lovington National Bank, and "Jane Doe" Jones, his wife.

3. Carlile was the President and a 50% stockholder of the Lovington National Bank.

4. Bechtel claimed that most of the misrepresentations were set forth in a brochure describing the farm. The brochure was published by the bank in connection with its efforts to sell the farm and stated, in pertinent part:
 FOR SALE BY OWNER
 6,460 acres—550 irrigated acres—3 strong irrigation wells

 Beautiful Home. Water. Water. Water.
 Water

The properties are located in prosperous Cochise County—the cotton bowl of Arizona. This is 4-bale premium cotton country, good diversified farm land for a wide variety of crops . . . Most important, there are (3) strong, irrigation wells on the properties and there is abundant irrigation water available for future needs.
The brochure further represented that each of the three wells had a lift of 325 feet.
 Bechtel also asserted that the bank's sales agent for the transaction, one Sanders, had stressed that the farm "would support 450 acres of cotton and raise a maximum crop" and that "there were pipes of water."

5. A part of this $45,000 was used by Bechtel to make payments on another farm that he owned, a farm located a few miles away from the property involved in this suit.

found for appellee and assessed compensatory damages in the amount of $260,000 against the bank and also against Carlile and his wife individually. In a separate, special verdict, the jury found that no punitive damages were awardable. Judgment was entered pursuant to the jury verdict, and this appeal followed.

Appellants urge several grounds for reversal: (1) improper venue as to the bank; (2) failure to prove, as to both the bank and Carlile, all the requisite elements of fraud under Arizona law; and (3) failure to apply the proper measure of damages under Arizona law.

█ Having carefully reviewed the entire record in this case, we have concluded that the finding of liability in favor of Bechtel must be upheld. Under proper instructions, the jury resolved the necessary questions germane to liability, and we cannot fairly say that the evidence was insufficient to support its determination.[6] We are convinced, however, that the suit against the bank should have been dismissed for lack of venue. Moreover, we have an even stronger conviction that the amount of damages awarded was grossly excessive, based on the application of improper standards without adequate support in the proof, and consequently unsustainable. We note in this connection that the jury refused to award exemplary damages, thus finding by implication that appellants had not engaged in oppressive conduct.

### VENUE

█ The appellant bank is a national bank. In suits against such institutions, venue is fixed by 12 U.S.C. § 94, which provides:

---

**6.** Carlile argues that Bechtel failed to prove the claim of fraud against him because none of the asserted misrepresentations contained in the brochure or made by Sanders were attributed to Carlile individually. However, the law does not require such proof.

> An agent who fraudulently makes representations, uses duress, or *knowingly assists* in the commission of tortious fraud or duress by his principal or by others is subject to liabili-

Actions and proceedings against any association under this chapter [National Banks] may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

The statute is mandatory, *Mercantile National Bank v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), and has generally been construed narrowly and strictly. *See, e. g., Helco, Inc. v. First National City Bank,* 470 F.2d 883 (3d Cir. 1972); *First National Bank of Boston v. United States District Court,* 468 F.2d 180 (9th Cir. 1972); *United States National Bank v. Hill,* 434 F.2d 1019 (9th Cir. 1970); *Nevada National Bank v. Superior Court, Los Angeles County,* 45 Cal.App.3d 966, 119 Cal.Rptr. 778 (1975); *Central Bank, National Ass'n v. Superior Court, Sacramento County,* 30 Cal.App.3d 962, 106 Cal.Rptr. 912 (1973); *Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank,* 133 N.J.Super. 462, 337 A.2d 390 (1975). However, a bank can waive the statute's protection. *Charlotte National Bank v. Morgan,* 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889). Thus, unless Lovington National Bank waived its privilege, it is unquestionable that Bechtel could only bring suit against it in the New Mexico county in which it is established. Bechtel argues, of course, that the bank did effect a waiver, either by having chosen the forum itself or by failing to assert its privilege in a timely manner. We cannot agree with either contention.

█ Bechtel asserts that the bank waived the statutory venue provision by

---

ty in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal. RESTATEMENT (Second) of AGENCY § 348 (1958) (emphasis added).

There was sufficient evidence in the record of Carlile's personal involvement in the sale of the farm to warrant the determination of his individual responsibility.

negotiating the earnest money contract in Arizona, instituting forfeiture and receivership proceedings in Arizona, and obtaining judgment on Bechtel's promissory note in an Arizona court. Although there is some divergence of opinion among courts that have considered similar questions, *compare Michigan National Bank v. Superior Court, Contra Costa County,* 23 Cal.App.3d 1, 99 Cal.Rptr. 823 (1972) *with Helco, Inc. v. First National City Bank, supra,* it is our view that the bank's Arizona activities in this case were not sufficient to constitute the alleged waiver. If proof of a waiver rests on one's acts, "his act[s] . . . should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible." *Buffum v. Chase National Bank of City of New York,* 192 F.2d 58, 61 (7th Cir. 1951), *cert. denied,* 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952). We simply cannot accept the proposition that the bank's limited use of the Arizona judicial process in the forfeiture and receivership proceedings evidenced such an intent. *See Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank, supra.* Neither can we believe that the negotiation in Arizona of an earnest money agreement for the sale of *Arizona* land, or the bank's suit to recover on Bechtel's *personal* note deprived the bank of its congressionally conferred right to be sued only in its home county.

The situation here is manifestly different from that presented in *Reaves v. Bank of America,* 352 F.Supp. 745 (S.D.Cal.1973), upon which Bechtel principally relies. We note the distinction, while, at the same time, expressing neither approval nor disapproval of that opinion. Although the court there took into consideration that a promissory note and security agreement for the involved automobile had been executed in the Southern District of California, and that the bank repossessed the vehicle in that district, the decisive element was the fact that the bank had sued and been sued in that district hundreds of times without ever raising a venue objection. The court found the bank's "previous failure to object to being sued in this district . . . inconsistent with its claim that it is not present for venue purposes. . . . [I]ts conduct warrants a strong inference of the relinquishment of a known right . . . ." 352 F.Supp. at 750. In our case, there was no evidence that the Lovington bank had engaged in similar conduct.

In the alternative, Bechtel contends that Rule 12, Fed.R.Civ.P.,[7] required the bank to file its motion challenging venue within 20 days after removal of the suit to the District Court. By its failure to do so, he argues that the bank waived its privilege. The argument has been accepted by some courts. *See, e. g., Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc.,* 343 F.2d 7 (8th Cir. 1965); *Granger v. Kemm, Inc.,* 250 F.Supp. 644 (E.D.Pa. 1966); *Nelson v. Victory Electric Works, Inc.,* 210 F.Supp. 954 (D.Md.1962), *aff'd,* 338 F.2d 994 (4th Cir. 1964). One noted commentator appears to agree. 2A Moore's Fed.Prac. ¶ 12.06 (1975). Apparently, their reasoning is that because Rule 12(a) requires the responsive pleading to be served within 20 days after service of the summons and complaint, that period also restricts the time for raising those defenses that must be asserted either by motion or in the respon-

---

7. Rule 12, in pertinent part, provides:

(a) A defendant shall serve his answer within 20 days after the service of the summons and complaint upon him . . . The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court:

(1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action . . .

(b) Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . .

(3) improper venue . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . .

sive pleading under Rule 12(b). We believe, however, that such an overly rigid interpretation of the pertinent provisions of Rule 12 cannot be justified. *See* C. Wright & A. Miller, Federal Practice & Procedure § 1391 (1969).

■ Rule 12(b) states that a motion raising the specific defenses listed "shall be made before pleading if a further pleading is permitted." The Rule does *not* limit the period to 20 days, and, to us, the reasonable interpretation of the Rule is that such a motion may be made at any time prior to such a pleading. Thus, if an extension of time has been allowed for filing a responsive pleading, logic and reason would appear to dictate that the extension should apply to a motion as well. *Didactics Corp. v. Welch Scientific Co.,* 291 F.Supp. 890 (N.D.Ohio 1968).

Here, the bank filed its original motion to dismiss on April 29, 1971. It filed an amended motion asserting improper venue on July 8, 1971.[8] No hearing was held on the motion until November 22, 1971. The answer to the complaint was filed on November 24, 1971. Thus, it is apparent that the bank's venue challenge was filed well in advance of the hearing and of the required responsive pleading. This is all that Rule 12(b) requires; therefore, the bank's motion was timely and should have been granted.

## DAMAGES

■ Under Arizona law, the proper measure of damages in a fraud case such as this is the difference between the value of the land as it actually is and its value had the representations been true, the so-called "benefit-of-the-bargain" rule. Additionally, the buyer may recover any consequential damages that may have proximately resulted from the fraudulent conduct of the seller. *Ashley v. Kramer,* 8 Ariz.App. 27, 442 P.2d 564 (1968); *Cole v. Gerhart,* 5 Ariz. App. 24, 423 P.2d 100 (1967).

■ We think it readily apparent that in this case the appropriate measure of damages was not applied. Bechtel was allowed to present evidence as to all expenditures made on the farm for the period 1967–1971 without any showing that the expenditures were the actual consequence of misrepresentations as to the capacity of the wells. The only evidence on damages offered by Bechtel was a list of items[9] that Bechtel read to the jury. The items, as listed, were as follows:

```
1968—$25,000—down payment
1968—$4,300—¼ crop rent R.E. Hilburn
1968—$18,000—crop finance and operating capital
1968—$5,000—Grace fertilizer
1968—$1,300—Insurance/Mahoney Agency
1968—$1,000—Southwest Pipe Company
1968—$500—Bowie Lumber Company
1968—$350—Reliance Truck Company/Hauling
1968—$1,500—White Chemical
1968—$4,750—H.D. 16-A/Crawler
1969—$6,000—Machinery/Shaver
1969—$35,000—Lease to Bookwalter/R. E. Hilburn
 place
1969—$10,000—Lease on 1280
1970—$30,000—Bookwalter Lease Settlement
1970—$3,000—Lovington Bank/crop finance
1970—$45,000—Lovington Bank/personal loan
1967–71—$30,000—Peoples Bank/chattle [sic]
1968—$26,000—new well
```

The expense of the listed items totalled $246,700, only $13,300 less than the $260,000 of supposed compensatory damages awarded by the jury.

■ Although the evidence was thoroughly insufficient under the Arizona standard to justify any instruction on compensatory damages at all, the jury was instructed as follows:

Compensatory damages are those damages which fairly and justly compensate the plaintiff for the economic or monetary loss which he has sustained by reason of the acts of the defendant. In this regard, you may consider such things as the amount of monies which the plaintiff has shown to have actually lost by virtue of the acts or representations of the defendant, a loss of profits, if any, which

---

**8.** Bechtel argues that the bank waived venue by waiting more than two months to amend its original motion to dismiss. But Rule 12(h)(1), Fed.R.Civ.P. "does not in any way prevent a judge in his discretion from permitting a party

to expand the grounds of motion well in advance of a hearing." *MacNeil v. Whittemore,* 254 F.2d 820, 821 (2d Cir. 1958).

**9.** Defendant's Exhibit 0.

you feel the plaintiff would have made in the absence of such misrepresentations, and you may also consider what is known in the law as 'benefit of the bargain,' being the difference between what the plaintiff should have obtained as opposed to what he actually obtained from the transaction involved. . . .

Although for some inexplicable reason, appellants' trial counsel interposed no objection, either to Bechtel's reading the list of expenses conceived by him to be recoverable damages, or to the quoted jury instruction, an opportunity to review the damage award was afforded the trial court when the appellants moved for a judgment *non obstante veredicto* or a new trial on the ground, *inter alia,* that the amount of the compensatory damage award was grossly and intolerably excessive. But even should it be assumed that the appellants never made any protest whatsoever, we are left, from our study of the entire record, with "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Upon Bechtel rested the burden to establish every element of his claim, including the fair amount of his damages. *Fruit Industries Research Foundation v. National Cash Register Co.,* 406 F.2d 546 (9th Cir. 1969); *Kaufman v. Mellon National Bank & Trust Co.,* 366 F.2d 326 (3d Cir. 1966); *Kelly Tire Service, Inc. v. Kelly-Springfield Tire Co.,* 338 F.2d 248 (8th Cir. 1964); *Harry Alter Co. v. Chrysler Corp.,* 285 F.2d 903 (7th Cir. 1960); *Jones Memorial Trust v. Tsai Investment Services, Inc.,* 367 F.Supp. 491 (S.D.N. Y.1973); *Asher v. Reliance Insurance Co.,* 308 F.Supp. 847 (N.D.Cal.1970); *Hunter Contracting Co. v. Sanner Contracting Co.,* 16 Ariz.App. 239, 492 P.2d 735 (1972); *L'Ev-*

*esque v. Rognrud,* 254 Minn. 55, 93 N.W.2d 672 (1958). It is our conclusion that Bechtel utterly failed to meet his burden. And even though Bechtel did not present a scintilla of detailed evidence to support his compensatory damage claim under the appropriate Arizona standard, the jury was advised that it might award damages on the basis of that standard. In addition, the pertinent instruction permitted the jury to award Bechtel recovery for crop losses in future years, even though the market value of the property under the Arizona rule should indicate "the potential of future crop successes." *Cole v. Gerhart,* 5 Ariz.App. at 27, 423 P.2d at 103.

 Upon remand and retrial on the issue of compensatory damages, Bechtel may present evidence harmonizing with the "benefit-of-the-bargain" rule,[10] and he may attempt to show, as well, any consequential damages directly and proximately resulting from the misrepresentations as to the water wells. But, "[a] plaintiff seeking consequential damages for fraud . . . must establish the causal nexus with a good deal of certainty," *Zeller v. Bogue Electric Manufacturing Corp.,* 476 F.2d 795, 803 (2d Cir.), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973), and by no stretch of the imagination can many of the expenditures claimed by Bechtel meet that test. An analysis of the itemized expenses that we have hitherto listed reveals that the "damages" were in no conceivable way computed according to the appropriate standard to be applied in Arizona or, insofar as we can determine, anywhere else. For example, the $26,000 cost of a new well, drilled by the purchasers to irrigate new land, could have no relation to misrepresentations as to the three wells existing when the misrepresentations were made.[11] Neither can we

---

10. Our court has held that evidence of the cost of drilling a new well to supply adequate water may sometimes satisfy the Arizona rule. *Shepard v. Cal-Nine Farms,* 252 F.2d 884 (9th Cir.), *cert. denied,* 356 U.S. 951, 78 S.Ct. 916, 2 L.Ed.2d 844 (1958). There, however, as was not the case here, the new well was to supplement the supply of water to the same land.

11. We have difficulty in understanding why Bechtel was permitted to include the cost of the new well as a part of his evidence of damage, since the court repeatedly refused, we think correctly, to allow *appellants* to introduce evidence concerning the well on the ground that "[t]he existence of this new well has nothing to do with the representations of capability of the water production on that farm at the time of the sale . . . .".

fathom how the claims of $65,000 for the Bookwalter lease and lease settlement, and $4,300 contributed to the cost of the new well by the bank from its 25% share of the crop rent of the preceding tenant can be "damage" to Bechtel. And Bechtel used at least a portion of the $45,000 personal loan to pay bills owed by him on other property. In addition, the jury award apparently included the full value of a tractor (H.D. 16–A/Crawler) with no allowance for depreciation, in effect allowing appellee a double recovery on this item. Finally, expenditures for fertilizer, lumber, chemicals, crop hail insurance, etc., appear to be nothing more than the "incidents of entering into a business venture," *Salter v. Heiser*, 39 Wash. 826, 239 P.2d 327 (1951), rather than losses proximately caused by appellants' fraud. When one embarks upon a business venture, he necessarily undertakes the risk of operating at a loss. The effect of the judgment in this case is to shift all risk to the appellants, thereby enriching Bechtel unjustly.

 As we have previously emphasized, it must be proved "with a good deal of certainty" that any expenditures claimed were the direct and proximate result of the fraud.[12] *Applied Data Processing, Inc. v. Burroughs Corp.*, 394 F.Supp. 504 (D.Conn. 1975); *Fischer v. Division West Chinchilla Ranch*, 310 F.Supp. 424 (D.Minn.1970); W. Prosser, Law of Torts § 110 (4th ed. 1971). Furthermore, Bechtel may recover only those damages that were incurred during the first year of his ownership. Following the 1968 crop loss, he was fully aware of the water supply problem and had no legal right thereafter to rely upon appellants' misrepresentations. *Clements Auto Co. v.*

*Service Bureau Corp.*, 444 F.2d 169 (8th Cir. 1971); *Healey v. Ginoff*, 69 Mont. 116, 220 P. 539 (1923). *See Herz & Lewis, Inc. v. Union Bank*, 22 Ariz.App. 437, 528 P.2d 188 (1974). "Since the representer is not a guarantor, the victim of misrepresentation may not irresponsibly accumulate his losses to the detriment of the misrepresenter." *Lack Industries, Inc. v. Ralston Purina Co.*, 327 F.2d 266, 281 (8th Cir. 1964). Appellee was under a duty to minimize his damages. *Southwestern Packing Co. v. Cincinnati Butchers' Supply Co.*, 139 F.2d 201 (5th Cir. 1943).

As to Lovington National Bank, the action is dismissed for lack of venue.

 It appearing that the case was fully tried on the issues of liability and exemplary damages, there is no need to burden the District Court with a reexamination of those issues.[13] Accordingly, the judgments on those issues and against the appellants, other than the bank, are affirmed.

The judgment for compensatory damages is vacated, and the cause is remanded to the District Court for further proceedings consistent with the views that have been herein expressed.

Affirmed in part; reversed and remanded in part.

---

**12.** Expenditures to improve the existing wells would have such a nexus. *Cole v. Gerhart, supra.* Proof of any losses sustained on the 1968 crops would also be appropriate. *Id; Shepard v. Cal-Nine Farms, supra.*

**13.** Carlile argues that he should be granted a new trial on all issues because it is likely that the jury would not have rendered the verdict it did had Carlile been the sole defendant. But in *Washington Gas Light Co. v. Lansden*, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543 (1899), cited by

Carlile, and in similar cases decided by other courts, a major factor in the decisions to grant a remaining defendant a new trial on all issues was that the amount of damages awarded in those cases was largely and properly within the discretion of the jury. *Collins v. Smith*, 261 S.C. 334, 200 S.E.2d 71 (1973); *Mellon v. Kelly*, 99 Mont. 10, 41 P.2d 49 (1935); *Harrington v. H. D. Lee Mercantile Co.*, 97 Mont. 40, 33 P.2d 553 (1934). Here, we do not have a similar situation.